BLUE RIDGE ANESTHESIA AND CRITICAL CARE, INC.

v.

ROBERT J. GIDICK, ET AL.

Record No. 890531

March 2, 1990

Present: All the Justices

*Norman A. Kinnier (Fralin, Freeman & Kinnier*, on briefs), for appellant.
*Francis E. Mroz (Curtin, Noland & Gallagher*, on brief), for appellees.

JUSTICE WHITING delivered the opinion of the Court.

In this case, we determine the validity of an employer's non-competition agreement with three of its employees.

In 1985, Blue Ridge Anesthesia and Critical Care, Inc. (Blue Ridge) was selling critical care and anesthesia equipment to hospitals and other medical facilities in the District of Columbia, Maryland, North Carolina, Virginia, and West Virginia. Because there were a number of suppliers of such equipment and a limited number of medical facilities in these areas, Blue Ridge sold in a very competitive market.

In September 1985, Blue Ridge hired Thomas L. Ward and Paul F. Faupel, Jr., and in May 1986 it hired Robert J. Gidick. Upon being hired by Blue Ridge, each man signed an employment contract, which contained the following non-competition agreement:

> In consideration of the covenants made herein by Employer, Employee agrees that if his employment terminates for any cause after he has been employed for ninety (90) days, he will not, for a period of three years thereafter, open or be employed by or act on behalf of any competitor of Employer which renders the same or similar services as Employer, within any of the territories serviced by agent of Employer,[1] expressly provided however, that this covenant does

---

[1] There is no dispute that the words "agent of Employer," as used in the non-competition agreement, meant the employee named in the contract.

not preclude Employee from working in the medical industry in some role which would not compete with the business of Employer.

During their employment, Gidick functioned only as a salesman, while Faupel and Ward were primarily servicemen, occasionally engaging in sales activities.[2] In performing their sales and service duties, Gidick, Faupel, and Ward had contacts with Blue Ridge's customers. The evidence, however, conflicted as to the specific geographic territories covered by the three men.

Gidick was fired on October 7, 1987. Ward and Faupel resigned on October 30 and December 21, 1987, respectively.

Shortly after he was fired, Gidick began selling anesthesia equipment and other critical care equipment of the type sold by Blue Ridge in his former Blue Ridge sales territory. Then, three days before Ward's resignation, Gidick and Ward negotiated a sales distribution contract with an anesthesia equipment manufacturer for Sarah Medical, Inc. (Sarah), a corporation of which Gidick was the sole stockholder. After his resignation, Ward joined Sarah. Faupel later became a salesman for Sarah on April 1, 1988.

On April 27, 1988, Blue Ridge filed this suit against Gidick and Faupel seeking damages and an injunction to prohibit the violation of their non-competition agreements. Sarah and Ward were added as defendants in an amended bill of complaint filed on October 4, 1988.[3] On January 3, 1989, after hearing evidence, the trial court concluded that the non-competition agreements were invalid and, therefore, entered judgment for the defendants.

The validity of employer-employee non-competition agreements is determined by applying the following criteria:

(1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest?

(2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and op-

---

[2] Faupel and Ward were paid for their service work by Blue Ridge Clinical Equipment Services, Inc., a corporation in which 48 percent of the capital stock was owned by them, and the remaining 52 percent was owned by the principals of Blue Ridge.

[3] Other parties were joined as defendants but were later dismissed.

pressive in curtailing his legitimate efforts to earn a livelihood?

(3) Is the restraint reasonable from the standpoint of a sound public policy?

Non-competition covenants which pass these tests in the light of the facts of each case will be enforced in equity.

*Roanoke Eng. Sales* v. *Rosenbaum*, 223 Va. 548, 552, 290 S.E.2d 882, 884 (1982) (citations omitted).

In applying these principles, we consider the restriction in this case in light of the evidence that each employee served a limited territory in which he sold and serviced only critical care and anesthesia equipment on Blue Ridge's behalf. The restriction does not prohibit the former employees from selling critical care and anesthesia equipment outside their respective former territories or from selling any other goods and medical equipment within their former territories.

The former employees contend that the restraint is unreasonable from the standpoint of their former employer because they had insufficient customer contact and possessed no confidential information. However, in another case, decided after the trial court's decision in this case, we said

it is not necessary that 'the employees actually had acquired or possessed specific information that could be legally defined as confidential or a trade secret' . . . . [N]on-competition agreements are also justified where the employee comes into personal contact with his employer's customers.

*Paramount Termite Control* v. *Rector*, 238 Va. 171, 175, 380 S.E.2d 922, 925 (1989) (citation omitted).

■ Because of the competitive nature of Blue Ridge's business, the contacts of these former employees with Blue Ridge's customers could adversely affect Blue Ridge's efforts to continue its business with those customers. We conclude that these customer contacts suffice to show Blue Ridge's need for this non-competition agreement.

Next, the former employees argue that the restraint unreasonably restricts their right to earn a living because it is geographically and functionally overbroad. They maintain that the restraint prohibits them from selling medical equipment, or working in *any* capacity for a company which sells *any* medical equipment. More-

over, they contend that the restriction applies not only in all geographic areas in which Blue Ridge sold its equipment during their employment, but also in areas into which Blue Ridge may later expand. We do not agree with this interpretation of the non-competition agreement for several reasons.

■ First, the restriction in this case applies only in the "territories serviced by" the former employees, not Blue Ridge's entire market area at the time the employees left Blue Ridge's employ, or later.

Second, the former employees are not forbidden from working in *any* capacity for a medical equipment company, or from selling *any* type of medical equipment. They are only prohibited "from working in the medical industry in some role which would . . . compete with the business of [Blue Ridge]."

This restriction is unlike the restriction we struck down in *Richardson* v. *Paxton Company*, 203 Va. 790, 127 S.E.2d 113 (1962). There, a three-year non-competition agreement was found to be unduly harsh, overbroad, and unenforceable because it prohibited an employee from competing with *any* branch of the employer's business, even though the employee had had no connection with some of those branches. *Id.* at 795, 127 S.E.2d at 117. Here, the evidence indicates that Blue Ridge sells and services only anesthesia and critical care equipment in the respective territories served by these former employees.

As applied to the facts in this case, this restriction is similar to the restriction we upheld in *Roanoke Eng. Sales*, 223 Va. at 553, 290 S.E.2d at 885. That restriction prohibited an executive officer of a corporation, familiar with all its operations, from engaging in activities "similar to the type of business conducted by [the employer]." *Id.* at 551, 290 S.E.2d at 883. Here, it is only within their former respective territories that the former employees are prohibited from competing with the anesthesia and critical care business of Blue Ridge.

■ Finally, the former employees contend that this covenant is unreasonable from a public policy standpoint because it restrains trade and promotes a monopoly. However, any non-competition agreement restrains trade to some extent. The issue is whether it is an *unreasonable* restraint. *Stoneman* v. *Wilson*, 169 Va. 239, 245, 192 S.E. 816, 818 (1937); *see Roanoke Eng. Sales*, 223 Va. at 552, 290 S.E.2d at 884. Given the trial court's finding that "this is a wide open field with heavy competition, with multiple

competing products," we find that the restriction does not offend public policy.

For all these reasons, we conclude that the non-competition agreement is valid and enforceable.

■ On appeal, Blue Ridge has waived its claim for damages and asked for a prospective injunction. The former employees contend that the matter will soon be moot because the three-year non-competition period will lapse in October 1990. In similar situations, we have authorized the prospective enforcement of such a covenant. *Paramount*, 238 Va. at 176-77, 380 S.E.2d at 926; *Roanoke Eng. Sales*, 223 Va. at 556, 290 S.E.2d at 885-86. Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*