# CIRCUIT COURT OF THE CITY OF NORFOLK

Auto-Chlor Systems
of Northern Virginia, Inc.

v.

Todd Church

September 28, 2000

Case No. (Chancery) CH00-698

BY JUDGE MARC JACOBSON

The facts in the above-captioned cause basically are not in dispute. Auto-Chlor Systems of Northern Virginia, Inc., employed Todd Church, and Complainant and Defendant entered into an Employment Agreement dated February 3, 1998. The existence and contents of the Agreement are not in dispute and the Agreement provides, *inter alia*, as follows:

> During a period of one (1) year immediately following the termination of his employment with Auto-Chlor Systems of Northern Virginia, Incorporated, for any reason whatsoever, Employee agrees that he will not, either directly or indirectly, engage in competition with Auto-Chlor Systems of Northern Virginia, Incorporated, in any city or county or state serviced by the Company of Auto-Chlor Systems of Northern Virginia, Incorporated, during the period of (1) year following his date of termination. Engaging in such competition, as used in the subparagraph, shall be deemed to include, either directly or indirectly, conducting, being employed by, carrying on participating in or having any ownership interest in any business which competes with, is attempting to compete with or carries on a business the same as, competitive with or similar to, the business as then conducted by Auto-Chlor Systems of Northern Virginia, Incorporated.

The Agreement further provides in paragraph 8 that Defendant agrees that any violation of the Agreement would allow Complainant to demand specific enforcement of the Agreement and to account for and pay over to the Complainant all compensation or other benefits received by the Defendant as a result of such a breach.

Defendant terminated his employment with Complainant, and Complainant entered into an Employment Severance Agreement, which provided, *inter alia*, the following:

> Covenant Not to Compete. As considerations for this Agreement, Todd Church agrees that for a period of twelve months from the effective date of this Agreement, he will not, directly or indirectly, participate in a business similar to that of Company's business, or in a business competitive with the Company within the geographic area described as the Norfolk-Virginia Beach Service Area in which the Company provided services during the term of his employment. "Competitive business" includes businesses as owner, partner or agent, or as employee of any person, firm or corporation engaged in a similar business to the Company.

On or about February 23, 2000, Defendant accepted employment with Ecolab, Inc., which company, without dispute, is a business or enterprise similar to the type of business conducted by Complainant. In Defendant's Opposition to Plaintiff's Motion for Injunctive Relief, "Factual Background," Defendant alleges as follows:

> On February 23, 2000, Mr. Church accepted an offer of employment with Ecolab, Inc. ("Ecolab"), a company which is admittedly engaged in a business similar to the type of business conduced by Auto-Chlor. (See Todd Church Affidavit attached as Exhibit No. 3 and Mark Buran Affidavit attached as Exhibit No. 4.) However, Defendant did not take a sales position with Ecolab, Inc., and instead was hired as a service professional, and was responsible for installing, servicing and maintaining dishwashing, laundry and dispensing systems for the company's accounts. *Id.* At Ecolab, Inc., Defendant's duties are merely to service existing Ecolab, Inc., customers, not to sell products or services to customers or solicit new business. *Id.*

Defendant's duties as an employee of Complainant were described as including "the sales and servicing of restaurant equipment in the Tidewater, Virginia, area." (Response to Plaintiff's [Complainant's] First Request for Admissions 3.)

Complainant alleges in its Bill of Complaint that Defendant's employment with Ecolab violates the above referred to provisions of the Agreement and the Severance, and, on the basis of such alleged breach, Complainant moves this Court to:

> enjoin the Defendant from continuing employment with ECOLAB, Inc., that Defendant immediately account for all compensation received from ECOLAB, Inc., from the date of termination with the Complainant through the time of the injunction hearing, that the Court order the Defendant to refrain from providing any further information regarding the proprietary information of Auto-Chlor to his current employer and that the Court take such further action, including the award of attorney's fees and court costs made necessary by this action.

The law in Virginia is well settled that the enforceability of a restrictive covenant or a non-competition provision in an employment agreement is generally fact specific. "Whether restrictive covenants in an employee contract will be enforced in equity depends upon the facts in each particular case." *Richardson v. Paxton Co.*, 203 Va. 790, 794, 127 S.E.2d 113, 116 (1962).

In the case of *Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick*, 239 Va. 369, 389 S.E.2d 467 (1990), the Supreme Court of Virginia set forth the following guidelines:

> The validity of employer/employee non-competition agreements is determined by applying the following criteria:
> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interests?
> (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood?
> (3) Is the restraint reasonable from the standpoint from a sound public policy?
> Non-competition covenants which pass these tests in the light of the facts of each case will be enforced in equity.

■■■■■■■■■■■■■■

*Roanoke Eng. Sales v. Rosenbaum*, 223 Va. 548, 552, 290 S.E.2d 882, 884 (1982).

*Id.* at 372.

The *Blue Ridge Anesthesia* criteria have been used in a number of cases by the Virginia Supreme Court and remain the standard by which such covenants are to be assessed. "In cases of this type the employer has the burden of proving that the restraint is reasonable and the contract is valid." *Richardson v. Paxton Co.*, 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962). Such covenants are not favored in Virginia law and are strictly construed against the employer. *See Grant v. Carotek, Inc.*, 737 F.2d 410, 411 (4th Cir. 1984); *Clinch Valley Physicians, Inc. v. Garcia*, 243 Va. 286, 414 S.E.2d 599, 601 (1992). Nevertheless, "non-competition covenants which pass these tests in light of the facts of each case will be enforced in equity." *Roanoke Engineering Sales v. Rosenbaum* at 552, 290 S.E.2d at 884.

Virginia courts have determined that covenants which are too broad in the type of activities they prohibit are void and the cases that so hold, in effect, interpret such covenants to be ineffective in protecting the interests of employers. Defendant in his Opposition to Plaintiff's Motion for Injunctive Relief relies extensively on the case of *Richardson v. Paxton*. In *Richardson*, the employer's business was that of selling marine and industrial supplies, paints, chemicals, and services and the employer sought to enjoin a former salesman from being employed, directly or indirectly "in *any* branch of marine or industrial supplies, equipment, services business." *Id.* at 117 (Emphasis in the original). The specific covenant in question in *Richardson* read as follows:

> The Salesman agrees that he will not, directly or indirectly, either as principle, agent, or servant for a term of three (3) years after any termination of said employment, *enter or engage in any branch of marine or industrial supplies, equipment, services, business in the territory.* . . .

*Id.* at 795, 127 S.E.2d at 115 (emphasis supplied).

Specifically, the Court noted that the employer's business was *selling* marine supplies and services, whereas the covenant "not only restrict[ed] Richardson from selling, but prohibit[ed] him from entering or engaging in 'any branch' of activities relating to any kind or type of marine or industrial supplies. . . :" The Court determined that because the covenant "encompasse[d] activities in which [the employer] is not engaged," it was void as being overbroad. *Id.* at 795, 127 S.E.2d at 117.

Additionally, the Fourth Circuit has determined a similar covenant to be overly broad when it restricted an employee's ability to contract with an employer's competitors. In *Grant v. Carotek, Inc.*, 73 F.2d 410 (4th Cir. 1984), the covenant in question prohibited the employee from "contract[ing] with any of the principles [sic] or manufacturers with which the employer has contracts. . . ." The Court reasoned that "this prohibition went beyond a reasonable restraint designed to protect a company from unfair competition because on its face it barred Grant from entering into any contracts — even those having nothing to do with chemical equipment distribution [the subject of Carotek's business] — with Carotek's clients." *See id.* at 411.

The *Richardson* and *Grant* cases must be considered in the proper context *vis a vis* the instant cause. In these two cases, the courts were concerned that the covenants in question were void because they prohibited activities outside the scope of the *employer's* business. In *Grant*, the Fourth Circuit noted that the employee there "could not, for instance, contract to provide [competitors] office supplies without violating the clause." 737 F.2d at 412. There, the court reasoned that a proper covenant would restrict activities that related to the business purpose of the employer and would not prohibit contact with competitors unrelated to the employer's principal business purpose. In *Richardson*, the Virginia Supreme Court was concerned with the same idea; holding that the covenant was too broad because it prohibited activities in which the employer was not engaged. *See Richardson*, 203 Va. at 795, 127 S.E.2d at 117.

In the instant cause, the Defendant analyzes the covenant based upon the *Defendant's* type of occupation, and not the *employer's* type of business, arguing that the covenant is void because the Defendant could not be employed by a competitor in any field, be it janitorial or in sales. This approach has been expressly rejected by the Fourth Circuit in *Comprehensive Technologies Int'l, Inc. v. Software Artisans, Inc.*, 3 F.3d 730 (4th Cir. 1993). There, the District Court had determined that a covenant was too broad because it prohibited an employee from "working for a competitor in *any* capacity, even as a janitor (emphasis in original)." *Id.* at 738. In reversing the District Court's decision, the appellate court noted that other broad restrictions, relating specifically to the business purpose of the employer, have been upheld by the Virginia Supreme Court.

For example, in *Roanoke Engineering*, the Court upheld a covenant prohibiting an employee's right to "be employed by" a business similar to the employer's. The Court also upheld a restriction in *Blue Ridge* that an employee not "be employed by or act on behalf of any competitor" of the employer. *See Blue Ridge*, 239 Va. 369, 370, 389 S.E.2d 467, 468. These two

covenants prohibited employment by a competitor in the same business as the employer, and did not curtail contact unrelated to the competitor's business purpose.

Defendant contends that he was not in a sales position with Ecolab and that he is merely servicing existing customers of Ecolab and does not sell products or services of Ecolab, which is contrary to Defendant's admission set forth above. This issue is addressed in the *Blue Ridge Anesthesia* case in the following manner:

> The former employees contend that the restraint is unreasonable from the standpoint of their employer because they had insufficient customer contact and possess no confidential information. However, in another case decided after the trial court's decision in this case, we said "It is not necessary that 'the employees actually had acquired or possessed specific information that could be legally defined as confidential or a trade secret. . . . [N]on-competition agreements are also justified where the employee comes into personal contact with his employer's customers." *Paramount Termite Control v. Rector*, 238 Va. 171, 175, 380 S.E.2d 922, 925 (1989) (citation omitted).

239 Va. 369, 372 (1990).

The *Blue Ridge Anesthesia* case goes on to say:

> Because of the competitive nature of Blue Ridge's business, the contacts of these former employees with Blue Ridge's customers could adversely affect Blue Ridge's efforts to continue its business with its customers. We conclude that these customer contacts suffice to show Blue Ridge's need for this non-competition agreement.

*Id.* at 372.

It is undisputed that Ecolab sells and services the same equipment in the same territories served by Defendant while an employee of Complainant and that Ecolab is a business that "competes with, is attempting to compete with or carries on a business the same as, competitive with or similar to the business as now conducted by Auto-Chlor Systems of Northern Virginia, Incorporated," as set forth in the Agreement. Defendants, at the very least, would service or have the opportunity to service restaurant equipment of customers or former customers of Complainant.

The Court rules that the injunctive relief sought by the Complainant should be granted and Defendant is enjoined from employment or further

employment with Ecolab for the term and under the conditions set forth in the Agreement and Employment Severance Agreement referred to above. The Court reserves for further hearing such further relief, if any, which Complainant seeks.