## CIRCUIT COURT OF ALBEMARLE COUNTY

Better Living
Components, Inc.

v.

Willard Coleman
and Blue Ridge
Truss & Supply

April 6, 2005

Case No. (Chancery) CH04-13,307

BY JUDGE EDWARD L. HOGSHIRE

In response to the complainant's bill for injunctive relief, respondents Willard Coleman and Blue Ridge Truss & Supply have filed demurrers. Taken together, the demurrers state that each count of Better Living's Bill of Complaint fails to state a cause of action upon which relief may be granted. For the reasons set forth in detail below, this Court finds that the demurrers should be sustained on all counts.[1]

### Questions Presented

1. Whether the Noncompetition Clause of the Employment Agreement between Better Living and Willard Coleman is enforceable.

---

[1] After an initial hearing before the Honorable Paul M. Peatross, Judge Peatross recused himself and transferred the case to the undersigned. By agreement of the parties, the issues presented herein were submitted for judgment on the briefs without request for further argument.

2. Whether, if the Noncompetition Clause is not enforceable, the parties to the Agreement may authorize judicial "blue penciling" in order to make it enforceable within the bounds of the law.

*Factual Background*

Better Living, a Virginia and Albemarle County corporation, is engaged in the business of design, manufacture, sale, and distribution of roof trusses, floor trusses, wall panels, I-joist and laminated beams throughout the Commonwealth of Virginia and the State of Maryland. (Bill of Complaint, ¶ 1.) Coleman was employed as a sales representative with Better Living, having entered into an employment agreement on or about March 17, 1997. (Bill of Complaint, ¶ 3.)

That employment agreement contained the following paragraphs (Bill of Complaint at 10 (Exhibit A)):

8.2 Noncompetition. During the Sales Representative's employment and for a period of two (2) years thereafter, the Sales Representative shall not directly, or indirectly, for his own benefit or for the benefit of any other person, corporation, or other entity whatsoever other than the Corporation, engage in the business of, be an equity owner of, participate in or with, consult with or be employed by any person, corporation, or other entity engaged in the buying, selling, or dealing in the Products or any products which are in direct competition with the Products, within any of the territories serviced by the Sales Representative during his employment. The foregoing shall not prohibit Sales Representative from acquiring less than a 10% equity interest in a corporation, the stock of which is regularly traded on a national exchange or on the over-the-counter market. . . .

8.5 Modification of Covenants. Sales Representative [Coleman] acknowledges that the geographic and time restrictions and the description of proscribed activities contained in the covenants herein are reasonable and that the covenants are necessary to protect the Corporation's [Better Living's] legitimate business interests. If, however, a court of competent jurisdiction shall deem the geographic and/or time restrictions or the description of the proscribed activities as stated herein not to be reasonable, the

parties agree that the court may designate such geographic and/or time restrictions or description of proscribed activities as it deems reasonable and enforce the covenants as modified.

On September 30, 2004, Coleman resigned his position at Better Living and began working for Blue Ridge, which is "engaged in the same business activities as Better Living." (Bill of Complaint, ¶¶ 4-5.) At Blue Ridge, Coleman sold the same products as he had for Better Living in the same geographic sales area. (Bill of Complaint, ¶ 5.) Better Living alleges that Coleman thereby breached the Noncompetition Clause of the Employment Agreement, causing Better Living to suffer substantial and irreparable damage. (Bill of Complaint, ¶¶ 5-6.)

On or about October 14, 2004, Better Living notified Blue Ridge of the terms of the Employment Agreement, but Blue Ridge continued to employ Coleman after this notification, thereby contributing to the injury suffered by Better Living. (Bill of Complaint, ¶¶ 7-9.)

Better Living seeks injunctive relief and damages against Coleman for breach of contract and intentional interference with economic expectancies. It also seeks injunctive relief and damages against Blue Ridge for tortious interference with contract and intentional interference with economic expectancies. (Bill of Complaint, ¶¶ 11-28.)

*Analysis*

In considering a demurrer, the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991) (quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988)). Therefore, Complainant's facts alleged in the Bill of Complaint will be taken as true on their face in deciding whether the elements for each count have been sufficiently pleaded.

The Demurrers to Counts One and Three of the Bill of Complaint assert that the Noncompetition Clause is unenforceable because it is vague and overbroad. (Coleman Demurrer at 1; Blue Ridge Memorandum in Support of Demurrer at 3-4.) Virginia courts evaluate the validity and enforceability of restrictive covenants in employment agreements using well-settled principles. The validity of employer-employee noncompetition agreements is determined by applying the following criteria, discussed in *Roanoke Eng'g Sales v. Rosenbaum*, 223 Va. 548, 552, 290 S.E.2d 882, 884 (1982):

1. Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest?

2. From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood?

3. Is the restraint reasonable from the standpoint of a sound public policy?

Noncompetition covenants that are shown by the employer to meet each of these requirements, as applied to the facts of the case, will be enforced in equity. *Id.*

The Better Living clause survives the challenge that it is geographically overbroad. Past Virginia cases have found the phrase "within any of the territories serviced by [the employee]" not to be vague or overbroad. *See Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 373-74, 389 S.E.2d 467, 469-70 (1990). The geographical language in paragraph 8.2 here is essentially similar.

The clause fails the *Roanoke* test, however, with regard to the types of professional activities that are prohibited. To survive demurrer, a complainant must allege facts sufficient to show that the restraints in the Noncompetition Clause satisfy the three criteria. *Modern Env'ts, Inc. v. Stinnett*, 263 Va. 491, 493, 561 S.E.2d 694, 695 (2002). Better Living's Bill of Complaint only discusses the reasonableness of the agreement in paragraph 10, and there only makes bald conclusions of law without statements of fact to support its claims.

Better Living makes further arguments in its Memorandum in Opposition to the Demurrers. It presents no cases in which language similar to that used in the Employment Agreement was found to be enforceable. Rather, Better Living discusses why its language goes no farther than necessary to protect Better Living's legitimate business interests. It argues that a former employee may not work in any capacity for an entity "engaged in the buying, selling, or dealing in Better Living's products or products in direct competition with those products" because, regardless of his position within the entity, he could "share customer information, customer contacts, and trade secrets acquired during his Better Living employment to aid and assist a competitor dealing in the same or comparable products." (Memorandum in Opposition to the Demurrers at 5.)

Virginia courts have found many noncompetition clauses to be enforceable. For instance, the Supreme Court of Virginia upheld the language prohibiting an employee "from working . . . in some role which would

compete with the business of [the employer]." *Blue Ridge Anesthesia*, 239 Va. at 371, 389 S.E.2d at 469. In that case, the Supreme Court of Virginia found the following noncompetition clause to be enforceable:

> In consideration of the covenants made herein by Employer, Employee agrees that if his employment terminates for any cause after he has been employed for ninety (90) days, he will not, for a period of three years thereafter, open or be employed by or act on behalf of any competitor of Employer which renders the same or similar services as Employer, within any of the territories serviced by agent of Employer, expressly provided however, that this covenant does not preclude Employee from working in the medical industry in some role which would not compete with the business of Employer.

*Id.* at 370-71, 389 S.E.2d at 468 (footnote omitted).

The respondents, however, point to several Virginia cases for the proposition that the noncompetition clause is unenforceable. For instance, in *Alston Studios, Inc. v. Lloyd V. Gress & Assocs.*, 492 F.2d 279, 283 (4th Cir. 1974), the Fourth Circuit held the following clause unenforceable and void because, in part, it was too broad in that it encompassed activities in which Gress was not engaged. Under the agreement, Gress agreed:

> Upon termination of said employment as District Sales Manager with Alston, he will not continue in the school picture business, either directly or indirectly, for himself or any individual or company in said business for a period of two (2) years.

*Id.*

The lack of limiting language imposed too harsh a burden on Gress and his efforts to earn a living. More recently, in *Modern Environments*, 263 Va. at 493-94, 561 S.E.2d at 695, the Supreme Court of Virginia found the following clause unenforceable:

> Employee agrees that, for as long as Employee remains employed by the company, and for a period of one (1) years [sic] after Employee's employment with the Company ceases, Employee will not (i) directly or indirectly, own, manage, operate, control, be employed by, participate in, or be associated in any manner with the ownership, management, operation, or control of any business

similar to the type of business conducted by the company or any of its affiliates (a "competing business"), which competing business is within a fifty (50) mile radius of the home office or any business location or locations of the Company or any of its affiliates at which Employee worked.

The clause was inappropriate in that it prevented the employee from working in any capacity for a competitor of her former employer. *Id.*

Virginia precedent requires this Court to hold that, on these facts, the Better Living Noncompetition Clause is overbroad. The clause prevents Coleman from working in any capacity for a wide variety of companies dealing the types of products in which Better Living deals. Better Living has not alleged sufficient facts to show that the Noncompetition Clause proscribes a range of employment opportunities no greater than is necessary to protect Better Living's business interests; that the Clause is not unduly harsh and oppressive in curtailing Coleman's legitimate efforts to earn a livelihood; and that the restraint is reasonable from a public policy standpoint.

We turn now to paragraph 8.5, the modification clause. The language of that paragraph does not purport to *require* the court to reform the Noncompetition Clause. That is, the parties agree that the court *may* designate proper terms and enforce them as modified. Further, Virginia law certainly does not require a court to rewrite unenforceable contractual language, even at the parties' request. Therefore, the question is whether the Court has the legal authority to reform the Noncompetition Clause.

The "blue pencil rule" permits a court in a jurisdiction allowing the rule to excise unreasonable portions of a restraint on trade and enforce the remainder to the extent that it is reasonable, where it is clear from the terms of the agreement that the various portions of the restraint on trade are severable so as to be in essence multiple agreements. *Northern Va. Psychiatric Group, P.C. v. Halpern*, 19 Va. Cir. 279, 280 (Fairfax Co. 1999). Other jurisdictions go even further, adopting a "reasonableness" standard that permits a court not only to excise but also to add language in order to make the restraint on trade reasonable. Ferdinand S. Tinio, Annotation, *Enforceability, Insofar as Restrictions Would Be Reasonable, of Contract Containing Unreasonable Restrictions on Competition*, 61 A.L.R. 3d 397 (updated March 2005). Under either rule, enforcement must not go beyond what is reasonably necessary to protect the interests of the covenantee. *Id.* § 2a, *Halpern*, 19 Va. Cir. at 280.

There is a distinction between severing, where a covenant is excised entirely from the agreement, and "blue penciling," where the court rewrites invalid language to make it fit within the bounds of the law. Although Virginia

courts will look to the intent of the parties to determine severability of clauses or provisions, they will not "blue pencil" a contract to make it enforceable. *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958, 965-66 (W.D. Va. 2000) (citing *Cliff Simmons Roofing, Inc. v. Cash*, 49 Va. Cir. 156 (Rockingham 1999); *Nida v. Business Advisory Sys., Inc.*, 44 Va. Cir. 487 (Winchester 1998); *Pais v. Automation Prod., Inc.*, 36 Va. Cir. 230 (Newport News 1995)). The question of whether paragraph 8.2 may be severed from the Employment Agreement to preserve the enforceability of other provisions is not before this court at this time.

Although the Supreme Court of Virginia has not expressly ruled on the existence of a "blue pencil" power, it is clear that that Court does not consider the possibility of reforming unreasonable restraints on trade in any way. *See, e.g., Motion Control Sys., Inc. v. East*, 262 Va. 33, 37-38, 546 S.E.2d 424, 425-26 (2001). Circuit courts in Virginia have expressly addressed the topic and have uniformly denied the existence of such a power. *See, e.g., Cliff Simmons Roofing*, 49 Va. Cir. at 158; *Pais*, 36 Va. Cir. at 239. In declining to "blue pencil" an employment agreement in *Halpern*, 19 Va. Cir. at 282, Judge Fortkort asked, "does the judiciary want to become the employer's scrivener?"

*Halpern* involved a "savings clause" very similar to paragraph 8.5 here. That employment agreement, between two social workers and their employer, contained a non-solicitation clause similar to a noncompetition clause. (The text of the non-solicitation clause may be found in *Halpern*, 19 Va. Cir. at 280.) A separate provision, the savings clause, stated that, if the non-solicitation clause was declared overbroad by a court of competent jurisdiction, "it will be construed as limiting and reducing it as determined by a court of competent jurisdiction and shall be enforceable to the extent compatible with applicable law." *Id.* at 281. The court, however, found this savings clause to be against public policy because it raised troubling questions about interference with contracts and restraint of trade. *Id.* at 282.

Courts in some other jurisdictions have also determined that a "blue pencil" power would be against public policy. *See, e.g., Wiley v. Royal Cup, Inc.*, 258 Ga. 357, 370 S.E.2d 744 (1988) ("The 'blue pencil theory of severability' does not apply to employment contracts in Georgia."); *Samuel Stores, Inc. v. Abrams*, 94 Conn. 248, 256, 108 A. 541, 544 (1919) (When employers unduly restrict the rights of employees, "like the dog in the fable, they grasp too much, and so lose all."). *But see, e.g., Holloway v. Faw, Casson & Co.*, 319 Md. 324, 352-53, 572 A.2d 510, 524 (1990) (Maryland adheres to a blue pencil rule); *Reddy v. Community Health Found. of Man*, 171 W. Va. 368, 380, 298 S.E.2d 906, 917 (1982) (West Virginia adheres to a blue pencil rule); *Professional Liability Consultants v. Todd*, 345 N.C. 176,

468 S.E.2d 201 (1996) (incorporating by reference the dissenting opinion of Judge Smith in *Professional Liability Consultants v. Todd*, 122 N.C. App. 212, 221, 468 S.E.2d 578, 583-84 (1996)) (North Carolina adheres to a very limited blue pencil rule); *Eastern Business Forms, Inc. v. Kistler*, 258 S.C. 429, 433, 189 S.E.2d 22, 23 (1972) (South Carolina adheres to a blue pencil rule).

In light of these decisions, this Court does not believe the present noncompetition agreement should be "blue penciled."

Given the ruling of the Court with respect to the Employment Agreement, it is clear that the respondents' demurrers with respect to each count of the complaint must be sustained.