# CIRCUIT COURT OF FAIRFAX COUNTY

Strategic Enterprise
Solutions, Inc.

v.

Akira Ikuma

October 7, 2008

Case No. CL 2008-8153

BY JUDGE JONATHAN C. THACHER

This matter came before the Court on Mr. Ikuma's Demurrer. After considering counsels' oral and written arguments and reviewing the applicable legal authority the Court finds that certain provisions in the employment agreement are overbroad and therefore unenforceable. The Court further finds that Strategic Enterprises has properly pleaded a cause of action for breach of contract (inasmuch as the breach lies in the enforceable parts of the contract) as well as a cause of action for violations of the Virginia Uniform Trade Secrets Act.

## Background

Plaintiff, Strategic Enterprise Solutions, Inc. (hereinafter "SE Solutions") is an information technology ("IT") corporation that provides IT and management consulting services to government and private sector clients. On August 28, 2006, SE Solutions hired the Defendant, Mr. Ikuma, as an employee. At that time, the parties entered into a written employment and confidentiality agreement (the "Agreement"). During his tenure at SE Solutions, Mr. Ikuma provided services to the Department of Homeland Security ("DHS"). In addition to his other duties, Mr. Ikuma cultivated and expanded contacts within DHS and worked in client relations, marketing, and positioning of SE Solutions within DHS.

On January 2, 2008, Mr. Ikuma informed SE Solutions that he intended to resign, and his employment with SE Solutions was indeed terminated on that day. During an exit interview, Mr. Ikuma informed SE Solutions that he would be going to work with Booz Allen Hamilton ("BAH"). BAH also provides services for DHS. In late May of 2008, Mr. Ikuma began contacting employees of SE Solutions who were providing services to DHS and spoke with them about job opportunities at BAH.

SE Solutions brings this lawsuit in four counts. Count I is for declaratory judgment, asking the Court to declare that the applicable provisions in the Agreement are enforceable as set forth in the agreement or, in the alternative, as modified by the Court. Count II is for a temporary and permanent injunction. Count III is for breach of the Agreement. Count IV is for misappropriation of trade secrets pursuant to the Virginia Uniform Trade Secrets Act. Presently before this court is Defendant's demurrer to all causes of action.

## Analysis

On demurrer, a plaintiff must assert facts that set out the essential elements of a cause of action. *Dray v. New Market Poultry Products, Inc.*, 258 Va. 187, 189 (1999). Moreover, the court must admit as true all of the material facts properly alleged and those that may be fairly and justly inferred from the alleged facts. *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397 (1991).

### A. *This Matter Is Appropriate on Demurrer*

As a threshold matter, this Court first must consider whether the enforceability of this employment agreement can be determined on demurrer. SE Solutions alleges that Mr. Ikuma breached an employment agreement

between the parties. The first element of a breach of contract action is a *legally enforceable* obligation of a defendant to a plaintiff. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Although a court must accept as true all of the material facts properly alleged in the complaint, the court does not have to accept "the correctness of the pleader's conclusions of law." *Blake Constr. Co. v. Upper Occoquan Sewage Auth.*, 266 Va. 564, 570-71, 587 S.E.2d 714-15 (2003). The existence of a legally enforceable obligation is a question of law, and not fact. Correspondingly, the enforceability of restrictive covenants is a question of law for a court to decide. *Simmons v. Miller*, 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001). Therefore whether or not the employment agreement is overly broad and therefore unenforceable is a question of law appropriate for this Court to decide on demurrer.

## B. *Enforceability of Non-Competition Provisions*

Mr. Ikuma argues that the non-competition clauses in the Agreement at issue are overbroad and therefore unenforceable. The Agreement contains three paragraphs that constitute restrictions on competition. Paragraph 13(a) of the Agreement relates to employees competing with SE Solutions post-employment, Paragraph 13(b) prohibits former employees from communicating with customers of SE Solutions and Paragraph 14 is a clause prohibiting ex-employees from soliciting SE Solutions current employees.

Restrictive covenants on trade are not favored in Virginia. *See Modern Env'ts v. Stinnett*, 263 Va. 491, 493, 561 S.E.2d 694, 695 (2002). Whether a restrictive covenant is enforceable is a question of law to be determined by the Court. *Simmons v. Miller*, 261 Va. 561, 581, 544 S.E. 2d 666, 678 (2001). In evaluating a covenant restricting post-employment activities, Virginia courts use a three prong test:

> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than necessary to protect the employer in some legitimate business interest?
>
> (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood? and,
>
> (3) Is the restraint reasonable from the stand point of a sound public policy?

*New River Media Group, Inc. v. Knighton*, 245 Va. 367, 369, 429 S.E.2d 25, 26 (1993).

In assessing reasonableness, Virginia courts focus on three factors: (1) the duration of the restraint; (2) the geographic scope of the restraint; and (3) the scope and extent of the activity being restricted. *See, Simmons*, 261 Va. at 581, 544 S.E.2d at 678. Additionally, Virginia courts consider whether the restrictive covenant prohibits the employee from employment with a company that *actually* competes with the employer. *Motion Control Systems*, 262 Va. at 37-38, 546 S.E.2d at 426. Restrictive covenants that prohibit employees from working in any capacity for a competitor are overbroad. *Id.*

### 1. Paragraph 13(a): Restriction on Competition

The defendant does not dispute the duration of the non-compete, so that factor will not be discussed.

Examining the geographic scope of the case at bar reveals an ambiguity. Mr. Ikuma correctly points out that a "100 square mile radius" is a mathematical impossibility, containing both a linear measurement and an area measurement. Ambiguous terms in employment contracts will be construed in the employee's favor. *Motion Control Systems v. East*, 262 Va. 33, 38, 546 S.E.2d 424, 426 (2001). This ambiguity, when construed against the employer, would seem to limit the radius for purposes of Paragraph 13(a) to 5.642 miles - a circle with an area of 100 square miles has a radius of 5.642 miles. This alone is reasonable. However, these factors are not considered in isolation.

The Court must also evaluate the scope of the restricted activities. In Virginia, restrictive covenants preventing the employee from being employed in any capacity by a competitor have been struck down as overly broad. *See Modern Env'ts v. Stinnett*, 263 Va. 491, 493-94, 561 S.E.2d 694, 695 (2002); *Omniplex World Services Corp. v. US Investigations Services*, 270 Va. 246, 249-50, 618 S.E.2d 340, 342 (2005). In *Modern Env'ts*, the non-compete clause stated as follows: [for a period of one year] "Employee will not (i) *directly or indirectly, own, manage, operate, control, be employed by, participate in, or be associated in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by the company* or any of its affiliates [a "competing business"]. . . ." *Id.* at 493 (emphasis supplied). The *Modern* court struck this non-compete down as overly broad because it prohibited the employee from being employed by a competitor *in any capacity*.

In this case, the pertinent language in Paragraph 13a of the Agreement reads: [the employee will not] "actively engage (whether as an employee, individual, proprietorship, partner, stockholder, associate, or consultant) in any business in competition with Employer, as Employer's business is constituted within one year preceding the date of termination, expiration, and/or nonrenewal of this Agreement." A natural reading of this phrase prohibits Mr. Ikuma from working, in any capacity, for a competing business. Paragraph 13(a) of the Agreement is devoid of any qualifying language regarding the employee's position with the employer or with the competitor. Under this Agreement, Mr. Ikuma could not be employed by BAH as a janitor, solely because BAH is a competitor of SE Solutions. Additionally, this clause is unreasonable from the standpoint of the employee because it requires the employee to know the entire scope of the SE Solutions' business in order to determine with whom SE Solutions is in competition. SE Solutions could have contracts with top secret government agencies that the majority of their employees do not have knowledge of, yet these same employees would be prohibited from working for these top secret government agencies. For these reasons, the Court determines that Paragraph 13(a) of the agreement is overly broad and therefore unenforceable as a matter of law.

## 2. Paragraph 13(b): Restriction on Solicitation

Virginia applies the same test to non-solicitation clauses that it applies to non-competition clauses. *See Foti v. Cook*, 220 Va. 800, 805, 263 S.E.2d 430, 433 (1980) (applying the same three prong reasonableness test used for non-competes to a non-solicitation clause). With this clause, the applicable and important line of inquiry is whether or not the employer is protecting a legitimate business interest and whether or not this protection is overly burdensome on the employee. In *Blue Ridge Anesthesia & Critical Care v. Gidick*, 239 Va. 369, 389 S.E.2d 467, 469-70 (1990), the Virginia Supreme Court upheld a non-compete clause that restricted former employees (salesmen) from working in the medical field in a position that would compete with Blue Ridge Anesthesia. *Id.* at 372-74. The employees were only prohibited from working in the region where the employees sold their equipment while employed with Blue Ridge. The non-compete clause also prohibited the employees from contacting the employer's customers in those territories. The Court stated that the former employees could harm the employer by contacting the employer's customers. The court upheld this restrictive covenant because it was narrowly tailored to cover those services rendered by the former employee to the specific customer. *Id.*

In the case at bar, the non-solicitation clause plainly prohibits Mr. Ikuma from communicating with any customers of SE Solutions in any manner. The pertinent part of Paragraph 13(b) reads [Employee will not] "*voluntarily or involuntarily*, directly or indirectly, solicit, call upon, *or otherwise communicate* with any customers of Employer for which Employer performed services or sold product. . . ." (Emphasis supplied.) The specific customer in this case is the Department of Homeland Security. DHS is a very large government organization that in 2004 had 183,000 employees. Under this clause, if Mr. Ikuma had information regarding a terrorist threat, he would be *prohibited* from speaking to a DHS employee about this information. In a less extreme example, if Mr. Ikuma saw a former DHS co-worker at the grocery store and the former co-worker spoke to him casually, asking about his family, Mr. Ikuma would be prohibited from speaking to him under this clause. Nothing about this solicitation clause is narrowly tailored. The clause prohibits all forms of communication with customers of SE Solutions, no matter what the content of the conversation may be, no matter what role the recipient of the conversation has with the customer, and no matter what position the employee held at SE Solutions. This non-solicitation clause is overly broad and unenforceable as a matter of law.

### 3. *Paragraph 14: Inducing Employees to Leave Employer*

Paragraph 14 is a prohibition on ex-employees soliciting the current employees of SE Solutions. Under *Omniplex*, non-compete provisions are upheld only when "employees are prohibited from competing directly with the former employer, or through employment with a direct competitor." *Omniplex*, 270 Va. at 249, S.E.2d at 342. Non-compete provisions must be narrowly tailored and no broader than necessary to protect a company's legitimate business interests. *See New River Media Group*, 245 Va. 367, 369, 429 S.E.2d 25, 26 (1993). Paragraph 14 in no way limits its reach to keeping employees from competing directly with SE Solutions.

Sub-part (iv) of Paragraph 14 reads as follows "Employee agrees that, during the term of employment and for two years after the date of termination, expiration, and/or nonrenewal of this Agreement, Employee will not in any way, directly or indirectly . . . (iv) hire or engage any employee of Employer or any former employee of Employer whose employment with Employer ceased less than two (2) years before the date of such hiring or engagement." By way of example of how wide this provision reaches, assume that Employee A started employment with SE Solutions on June 1, 2008, was fired for cause on September 1, 2008, and opened up a pizza parlor on September 15, 2008.

Employee B retired from SE Solutions on May 1, 2008. Even though Employees A and B never worked at SE Solutions at the same time and had never even met, Employee A could not hire Employee B to work at the pizza parlor without violating Paragraph 14. Clearly this clause is overly broad; it does not limit employees from competing directly with the former employer or through employment with a direct competitor. Paragraph 14 is unenforceable as a matter of law.

For the reasons stated above, the Court finds that paragraphs 13(a), 13(b), and 14 are overbroad and therefore unenforceable as a matter of law.

## C. *Virginia Does Not "Blue Pencil" Contracts*

At various points in the Complaint, SE Solutions asks this Court to modify the terms of this Agreement if the Court finds that the terms are overly broad. *See, e.g.*, Complaint, p. 11. The "blue pencil rule" permits a court to modify an otherwise unenforceable restriction to make it reasonable where it is clear from the terms of the agreement that it is severable. 61 A.L.R. 3d 397. The Virginia Supreme Court has not directly ruled on "blue-penciling" overly broad clauses in restrictive covenants, however it is clear from the restrictive covenant jurisprudence in Virginia that the Court does not entertain the notion that these disfavored restraints on trade should be reformed by the judiciary, rather they construe them against the employer when any ambiguity arises. See, e.g., *Modern Env'ts v. Stinnett*, 263 Va. 491, 493-94, 561 S.E.2d 694, 695 (2002) (stating that covenants restricting competition are disfavored and that any ambiguities are construed against the employer). Circuit courts throughout the Commonwealth have refused to "blue pencil" non-compete clauses. *See, e.g., Pais v. Automation Products, Inc.*, 36 Va. Cir. 230, 239 (1995); *Northern Va. Psychiatric Grp. v. Halpern*, 19 Va. Cir. 279 (1990). The U.S. District Courts for both the Eastern and Western Districts of Virginia have also concluded that Virginia does not follow the "blue pencil" doctrine. *See, Lanmark Tech, Inc. v. Canales*, 454 F. Supp. 2d 524, 529 (E.D. Va. 2006); *Roto-Die, Inc. v. Lesser*, 899 F. Supp. 1515, 1523 (W.D. Va. 1995). For these reasons, this Court declines to modify Paragraphs 13(a), 13(b), or 14.

## D. *SE Solutions Has Properly Pleaded a Virginia Uniform Trade Secrets Act Cause of Action*

In considering a demurrer, the Court does not evaluate the merits of the claim. The sole question is whether the factual allegations in the complaint state a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427

S.E.2d 181, 183 (1993). To establish a cause of action for a trade secret violation, two statutory elements must be proved, namely, the existence of a "trade secret" and its "misappropriation" by the defendant. *MicroStrategy, Inc. v. Li*, 268 Va. 249, 263, 601 S.E.2d 580, 588 (2005). The Virginia Code defines a trade secret as information that (1) derives independent economic value from not being generally known and (2) is the subject of reasonable efforts to maintain its secrecy. Va. Code § 59.1-336. To prove a misappropriation of these trade secrets, the plaintiff must prove two things: (1) that the defendant disclosed or used trade secrets developed by the plaintiff without its express or implied consent and (2) that the defendant knew or had reason to know that their knowledge of the trade secrets was either acquired under circumstances giving rise to a duty to maintain their secrecy or derived from or through a person who owed such a duty to the plaintiff. *Id.* Rule 1:4(d) of the Supreme Court of Virginia outlines the pleading requirements in Virginia, which is a notice pleading jurisdiction. It says that "every pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the party of the true nature of the claim or defense." Rule 1:4(d), Sup. Ct. of Va.

In this case, Paragraphs 49-56 of the Complaint relate to the VUTSA claim. SE Solutions alleges that Mr. Ikuma acquired SE Solutions customer information (¶ 52), which SE Solutions employs reasonable efforts to maintain the secrecy of. (¶ 51.) SE Solutions alleges that Mr. Ikuma disseminated that information to a direct competitor. (¶ 54) SE Solutions further alleges that Mr. Ikuma knew that his knowledge of the information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. ¶ 55. SE Solutions has met the pleading requirements for a VUTSA Claim, and Mr. Ikuma's demurrer as to this count is overruled.

*Conclusion*

For the reasons stated above, the provisions in Paragraphs 13(a), 13(b), and 14 are held to be unenforceable as a matter of law. Accordingly, Mr. Ikuma's demurrer with respect to any count, or part of a count, which rests on the enforcement of these provisions is sustained. Mr. Ikuma's demurrer with respect to Count IV is overruled.