# CIRCUIT COURT OF FAIRFAX COUNTY

Lasership, Inc.

   v.

Belinda Watson
and Midnite Air Corp.,
d/b/a Midnite Express

August 12, 2009

Case No. CL-2009-1219

BY JUDGE ROBERT J. SMITH

This matter came before the Court on Defendants' demurrer. After considering oral and written arguments, and reviewing the applicable legal authority, the Court finds that certain provisions in the employment agreement are over-broad and therefore the employment agreement is unenforceable as a matter of law. As a result Defendants' demurrer is sustained without leave to amend.

*Background*

Plaintiff Lasership, Inc. (Lasership), is a Delaware corporation and is a full service messenger and delivery company with offices throughout Washington, D.C., and the surrounding metropolitan area. (Compl. ¶ 1.)

Plaintiff filed the instant action against its former employee, Belinda Watson, and Watson's present employer, Midnite Air Corporation (Midnite), to enforce a covenant not to compete, a non-solicitation clause, and a confidentiality agreement contained in an employment agreement signed by Watson on January 29, 2007, while in the employ of Lasership. (Compl. ¶¶ 14-17; Compl. Ex. A.)

Paragraph 8(d) of the employment agreement contains the covenant not to compete. It states:

> Throughout any period during which Employee is an employee of the Company, and for a period of one (1) year from and after the date upon which Employee shall cease for any reason whatsoever to be an employee of the Company, Employee covenants and agrees that he will not directly or indirectly for himself or for the benefit of another engage, directly or indirectly, either as proprietor, stockholder, partner, officer, employee, or otherwise, in any business which sells or distributes products or provides services substantially similar to those sold or provided by the Company ("Services") within a forty-five (45) mile radius of the Company's office or offices that employee was assigned to during the twelve (12) month period immediately preceding the date upon which Employee's employment with the Company ceased. However, for purposes of this paragraph, this restriction with respect to the Company's Services applies only to those services rendered by Employee or an office or unit of the Company in which Employee worked or over which Employee had supervisory authority.

(Compl. Ex. A. ¶ 8(d).)

The solicitation clause is contained in paragraph 8(e) of the employment agreement and reads as follows:

> Employee expressly covenants and agrees that, in addition to any other limitation contained herein, for a period of two (2) years after the termination of Employee's employment under this Agreement, Employee shall not, for himself or on behalf of any other person, firm, corporation, or other entity, contact in any manner, directly or indirectly, solicit, agree to perform, or perform services of any type that the Company can render ("Services") for any of Company's Customers.

(Compl. Ex. A. ¶ 8(e).)

The confidentiality agreement is contained in paragraph 8(f) of the employment agreement:

> Employee expressly covenants and agrees that Employee shall not at any time or in any manner, without consent by the company, regardless of the circumstances, either directly or indirectly, divulge, disclose, or communicate to any person, firm, corporation, or other entity in any manner whatsoever any information concerning any matters affecting or relating to the business of Company, including without limitation, any of its Customers, independent contractors, or delivery network affiliates, the prices it obtains or has obtained from the sale of, or at which it sells or has sold, its products or services, trade secrets, advertising, or any other information concerning the business of Company, its manner of operation, its plans, processes, or other data without regard to whether all of the above-stated matters will be deemed confidential, material, or important, and Employee specifically and expressly stipulates that as between them such matters are important, material and confidential and gravely affect the effective and successful conduct of the business of Company and Company's goodwill, and that any breach of the terms of this Section 8 shall be a material breach of this Agreement.

(Compl. Ex. A. ¶ 8(f).)

In addition to the preceding provisions, the employment agreement also contains a severability clause. The clause reads:

> *Effect of Partial Invalidity.* The invalidity of any portion of this Agreement shall not be deemed to affect the validity of any other provisions. In the event that any provision of this Agreement is held to be invalid, the parties agree that the remaining provisions shall be deemed in full force and effect as if they had been executed by both parties subsequent to the expungement of the invalid provision. Further, if any part on any provision of this Agreement shall be determined to be invalid or unenforceable by reason of the extent, duration, or geographical scope thereof, or otherwise, then the parties agree that the court making such

determination may reduce such extent, duration, or geographical scope, or other provisions thereof, and in its reduced form such part or provision shall then be enforceable in the manner contemplated hereby.

(Compl. Ex. A. ¶ 15.)

Watson was employed as a Lead Dispatcher for Lasership's Global Critical Deliveries division in the company's office in Sterling, Virginia. (Compl. ¶¶ 6-7.) The Global Critical Deliveries division provides expertise in same-day worldwide shipping for customers. (Compl. ¶ 7.) Watson was responsible for overseeing hundreds of Lasership contractors and was privy to weekly management conferences and strategy sessions regarding Lasership's competitors, including Midnite. (Compl. ¶ 8.) Watson regularly had direct contact with Lasership's customers, was aware of Lasership's management process and techniques, was involved in high level management and business decisions, and had access to confidential information, including business strategies, policies, accounts, customer lists, trade secrets, procedures, and methods. (Compl. ¶¶ 8, 11, 12.) Furthermore, Lasership specifically trained and tested Watson in industry-specific TSA guidelines and regulations. (Compl. ¶ 10.)

Watson resigned from her employment with Lasership on January 3, 2009. (Compl. ¶ 6.) Immediately after her resignation, Midnite employed Watson. (Compl. ¶ 9.) Midnite is a direct competitor of Lasership and offers the same services to its customers that Lasership offers to its customers. (Compl. ¶¶ 9, 13.) Watson works in Midnite's office located in Chantilly, Virginia, which is within a 45 mile radius of the Dulles Office where she was assigned during the twelve month period immediately preceding her resignation from Lasership. (Compl. ¶¶ 13, 20.) Watson provides products and services to Midnite that are substantially similar to the duties she performed while employed with Lasership. (Compl. ¶¶ 13, 20.) She has also contacted, solicited, and/or performed services for Lasership "Customers" in the scope of her employment with Midnite and has allegedly communicated and/or disclosed Lasership's confidential information to Midnite. (Compl. ¶¶ 21, 23.) Lasership has suffered and will continue to suffer unspecified damages and harm to its business in an amount no less than $50,000. (Compl. ¶¶ 26, 40, 47, 50.)

The Complaint asserts a breach of contract claim against Watson (Count I), a tortious interference with contract claim against Midnite (Count II), and a claim of statutory business conspiracy against both defendants (Count III). In addition to the compensatory and liquidated damages Lasership

requests in Counts I and III, Count II requests an award of $100,000 in punitive damages against Midnite for its willful misconduct, malice, fraud, wantonness, oppression, and/or such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of Lasership. (Compl. ¶ 47.) Lastly, Lasership requests its costs and attorneys' fees from both Defendants in the action. (Compl. ¶¶ 40, 47, 50.)

Defendants' demurrer challenges all three counts.

### Appropriateness of Demurrer and Legal Standard

As a preliminary argument, Plaintiff asserts that "a demurrer is a poor vehicle for resolving the fact intensive inquiry necessary in evaluating the validity of any restrictive covenant." (Pl.'s Mem. in Opp'n to Defs.' Demurrers at 3-4.) Plaintiff relies on the Supreme Court of Virginia's decision in *Renner v. Stafford*, 245 Va. 351, 352, 429 S.E.2d 218, 219 (1993), for the proposition that a trial court should not decide disputes "without permitting the parties to reach a trial on the merits" and thereby "short-circuit litigation pretrial" by considering on demurrer factual challenges to restrictive covenants. (Pl.'s Mem. in Opp'n to Defs.' Demurrers at 3-4.) However, *Renner* did not deal with either a demurrer or a restrictive covenant. The case offers nothing more to the instant action than a cautionary statement regarding a court's premature conclusions of fact without permitting the parties a trial on the merits. *See Renner*, 254 Va. at 351.

While the cautionary reminder of *Renner* is dutifully noted by this Court, the legal standard of a demurrer remains the same. The purpose of a demurrer is to determine, as a matter of law, whether facts as they are pleaded are sufficient to pursue the legal and equitable relief sought. *See Votsis v. Ward's Coffee Shop, Inc.*, 217 Va. 652, 231 S.E.2d 236 (1977). A demurrer admits the facts alleged in the pleading and any reasonable inference therefrom in a light most favorable to the pleader. *See CaterCorp, Inc. v. Catering, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993). However, a demurrer does not admit the legitimacy of any of the pleader's legal conclusions. *Id.*

Count I of the Complaint asserts a breach of contract claim against Watson. The first element of a breach of contract action is a *legally enforceable* obligation of a defendant to a plaintiff. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). The existence of a legally enforceable obligation is a question of law, not fact. *Id.* Indeed, the enforceability of restrictive covenants has been consistently held to be a question of law appropriate for the court to decide. *Simmons v. Miller*, 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001). Thus, whether any of the three restrictive covenants

contained in Watson's employment agreement with Lasership are overly broad and unenforceable is a question appropriate for this Court to decide on demurrer.

Furthermore, determining the legal sufficiency of the claims asserted in Counts II and III is also appropriate for demurrer. This Court adheres to the standard of evaluating whether there is a legally cognizable claim by admitting the facts alleged in the pleading and any reasonable inferences that may be drawn in the light most favorable to the pleader.

### The Legal Sufficiency of Count I

Lasership asserts a breach of contract claim against Watson in Count I. The elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of the obligation. *See Filak,* 267 Va. at 619, 594 S.E.2d at 614; *Brown v. Harms,* 251 Va. 301, 306, 467 S.E.2d 805, 807 (1996); *Fried v. Smith,* 244 Va. 355, 358, 421 S.E.2d 437, 439 (1992); *Westminster Investing Corp. v. Lamps Unlimited, Inc.,* 237 Va. 543, 546, 379 S.E.2d 316, 317 (1989). The issue on demurrer is whether the restrictions in Watson's employment agreement with Lasership constitute legally enforceable obligations, satisfying the first element.

Watson's employment agreement contains a covenant not to compete, a non-solicitation clause, and a confidentiality agreement. (Compl. Ex. A. ¶¶ 8(d)-(f).) Restrictive covenants on trade are not favored in Virginia. *See Modern Env'ts v. Stinnett,* 263 Va. 491, 493, 561 S.E.2d 694, 695 (2002). Whether a restrictive covenant is enforceable is a question of law to be determined by the Court. *Simmons v. Miller,* 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001). Each restrictive covenant must be evaluated on its own merits balancing the provisions of the contract with the circumstances of the businesses and employees involved. *Omniplex World Servs. Corp. v. United States Investigations Servs., Inc.,* 270 Va. 246, 249, 618 S.E.2d 340 (2005).

Virginia courts will enforce a covenant restricting post-employment activities only if the contract: (1) is narrowly drawn to protect the employer's legitimate business interest; (2) is not unduly harsh and oppressive in curtailing the employee's ability to earn a living; and (3) is not against sound public policy. *See Omniplex,* 270 Va. at 249, 618 S.E.2d at 340; *New River Media Group, Inc. v. Knighton,* 245 Va. 367, 369, 429 S.E.2d 25, 26 (1993). In assessing the reasonableness of the restrictions under these prongs, Virginia

courts focus on the duration of the restraint, the geographic scope of the restraint, and the functional scope and extent of the activity being restricted. *See, Simmons*, 261 Va. at 581, 544 S.E.2d at 678.

Additionally, Virginia courts consider whether the restrictive covenant prohibits the employee from employment with a company that *actually* competes with the employer. *Motion Control Systems*, 262 Va. at 37-38, 546 S.E.2d at 426.

Lastly, restrictive covenants that prohibit employees from working in any capacity for a competitor are over-broad and, therefore, are unenforceable. *Id.*

A. *Enforceability of Paragraph 8(d): The Covenant Not To Compete*

Defendants argue that paragraph 8(d) of the employment agreement does not constitute a legally enforceable obligation because it prohibits an employee from working in *any* capacity for a competitor and is not limited properly in its functional scope to the activities that were performed by an employee for Lasership. (Defs.' Mot. To Sustain Demurrers at 2-4.) Defendant further claims that paragraph 8(d) contains restrictions relating to an employee's future services instead of Lasership's services and that ambiguity exists as to the meaning of the phrase "services substantially similar." (*Id.* at 4-6.)

Plaintiff asserts that the Virginia Supreme Court has enforced the same type of non-compete agreements with even broader restrictions. (Pl.'s Mem. in Opp'n to Defs.' Demurrers at 5.) Lasership claims that the language of the contract does not prohibit an employee from working in *any* capacity for a company that provides services that are substantially similar to those provided by Lasership, but rather prohibits an employee from providing the same services for another company that the employee rendered during her employment with Lasership. (*Id.* at 6.)

The focus of both parties' arguments rests on whether the functional scope of the restraint contained in the language of the covenant not to compete unduly restricts an employee's ability to earn a livelihood. On demurrer, this court can properly consider the validity of the clause on its face to determine if it is enforceable *per se* because the clause was referenced in the Complaint and was incorporated as an exhibit. *See Mantech Int. Corp. v. Analex Corp.*, 75 Va. Cir. 354 (Fairfax County 2008) (*citing Mutual Funding, Inc. v. Collins*, 62 Va. Cir. 34, 36 (Spotsylvania County 2003)).

The Supreme Court of Virginia routinely enforces covenants not to compete that limit the employers and employment positions an individual may pursue. Agreements that prohibit employees from taking specified, competing

positions with "any competitor of the employer" or with a business that provides "the same or similar services" as the employer have been upheld. *See Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick*, 239 Va. 369, 374, 389 S.E.2d 467, 470 (1990); *Roanoke Eng'g Sales Co. v. Rosenbaum*, 223 Va. 548, 551, 290 S.E.2d 882, 883 (1982).

In *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick, supra*, the Supreme Court of Virginia enforced a non-compete agreement that prohibited its former employees from competing positions with "any competitor of [the] [e]mployer which renders the same or similar services as [the] employer." *Blue Ridge*, 239 Va. at 370, 389 S.E.2d at 468. The employees were salesmen and servicemen for a medical supply business. *Id*. In its rationale, the Court upheld the clause because the agreement specifically clarified that the non-compete clause was not meant to "preclude [the] [e]mployees from working in the medical industry in some role which would not compete with the business of the [e]mployer." *Id*. at 373, 389 S.E.2d at 469.

Similarly, in *Roanoke Eng'g Sales Co. v. Rosenbaum, supra*, the Supreme Court of Virginia enforced a non-compete clause that prohibited a former employee from assuming a wide variety of duties with "any business similar to the type of business conducted by [the employer]." *Roanoke Eng'g*, 223 Va. at 551, 290 S.E.2d at 883. The duties were specifically limited such that an employee would not "directly or indirectly, own, manage, operate, control, be employed by, participate in, or be associated in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by employer at the time of the termination of this agreement." *Id*. The Court specifically distinguished the case from *Richardson v. Paxton Co.*, 203 Va. 790, 127 S.E.2d 113 (1962), because in *Richardson* a salesman of marine paints was prevented from engage[ing] in any branch of marine or industrial supplies, equipment, and services. *Roanoke Eng'g*, 223 Va. at 551, n. 3, 290 S.E.2d at 883, n. 3.

However, a covenant not to compete is functionally over-broad and unenforceable if it prevents an employee from working for companies not in competition with the former employer or it prevents an employee from pursuing noncompeting employment positions with *any* employer. *See Modern Env'ts, Inc. v. Stinnet*, 263 Va. 491, 495-96, 561 S.E.2d 694, 696 (2002); *Motion Control Systems, Inc. v. East*, 262 Va. 33, 37-38, 546 S.E.2d 424, 426 (2001); *Richardson v. Paxton Co.*, 203 Va. 790, 127 S.E.2d 113 (1962).

In *Motion Control Systems, Inc. v. East*, the Virginia Supreme Court held invalid a non-compete agreement that precluded an employee from being employed by "any business similar to the type of business conducted by the

[employer]." *Motion Control*, 262 Va. at 37-38, 546 S.E.2d at 426. The employer in *Motion Control* was a company that designed and sold a specialized type of brushless motor. *Id*. However, the covenant not to compete contained a provision that defined "similar business" as "any business that designs, manufactures, sells or distributes motors, motor drives, or motor controls." *Id*. The Court held the covenant not to compete overly broad because it restricted activities that "could include a wide range of enterprises unrelated to the business of the [employer]." *Id*.

Likewise, the Virginia Supreme Court has held agreements unenforceable that restrict employees from working for a competitor in noncompeting capacities. In *Modern Env'ts, Inc. v. Stinnet, supra*, the court refused to enforce an agreement that prohibited a former saleswoman of an office furniture supplier from employment with "any business similar to the type of business conducted by the [employer]" because the agreement failed to specify the competing positions which the contract prohibited the employee from performing. *Modern Env'ts*, 263 Va. at 495-96, 561 S.E.2d at 696. The Court held that prohibiting an employee from working in the employer's industry in any capacity was overly broad. *Id*. Similarly, in *Richardson v. Paxton Co., supra*, the Virginia Supreme Court refused to enforce a non-compete agreement that prohibited a salesman for a marine and industrial supplies business from "entering or engaging in any branch of marine or industrial supplies" because it "encompassed activities in which [the employee] was not engaged." *Richardson*, 203 Va. at 795, 127 S.E.2d at 117.

The restrictions at issue in the instant case are more similar to the restrictions in *Blue Ridge Anesthesia, supra*, and *Roanoke Eng'g Sales, supra*, than to *Motion Control Systems, supra*, because the restrictions prohibit future employment with a business that actually competes with the employer. In all of these cases, the restrictions are limited to "similar businesses" or any businesses that provide "substantially similar" services or products. Unlike the restriction in *Motion Control Systems*, the covenant in the instant case does not define "substantially similar" services or products to include activities that are beyond the services that Lasership provides. Thus, akin to the language in *Blue Ridge Anesthesia* and *Roanoke Eng'g Sales*, the prohibition in the instant case effectively limits the restriction to businesses that actually compete with Lasership.

However, in the instant case, the covenant not to compete "applies only to those services rendered by Employee or an office or unit of the Company in which Employee worked or over which Employee had supervisory authority." This language attempts to limit the restriction such that an employee may work for a competitor in a noncompeting capacity, but falls short. Bearing in mind

that restrictive covenants on trade are disfavored, are to be strictly construed, and, in the event of an ambiguity, will be construed in the favor of the employee, the inclusion of the language "or an office or unit of the Company in which Employee worked" makes the limitation over-broad.

In *Blue Ridge Anesthesia, supra,* the covenant not to compete specifically stated that it did not prevent an employee from obtaining a position in the same field that did not compete with the business of the former employer. In *Roanoke Eng'g Sales, supra,* the covenant not to compete precluded the employee from engaging in specifically listed duties associated with his employment.

However, reading the disjunctive phrase contained in the limitation by itself, the restriction "applies only to those services rendered by . . . an office or unit of the Company in which Employee worked." This restriction is not limited to the same functions that the employee performed for the employer. It includes all services rendered by an entire office or unit in which the employee worked. This would essentially bar the employee from performing or rendering services provided by anyone else in an office or unit that the employee worked, including janitorial, secretarial, administrative, or managerial work with which the employee had no meaningful interaction. Just like the covenant not to compete in *Modern Env'ts, supra,* and *Richardson, supra,* a strict construction of the restriction at bar encompasses activities in which the employee was not engaged, rendering it over-broad.

Thus, as a matter of law, the restrictive covenant not to compete is unenforceable.

B. *Enforceability of Paragraph 8(e): The Non-Solicitation Agreement*

Similarly, the non-solicitation clause in the instant case fails for overbreadth. Virginia applies the same test to non-solicitation clauses that it applies to non-competition clauses. *See Foti v. Cook,* 220 Va. 800, 805, 263 S.E.2d 430, 433 (1980).

Plaintiff argues that non-solicitation agreements are significantly more limited in scope than full non-competition agreements and do not pose nearly the same burden upon the employee. (Pl.'s Mem. in Opp'n to Defs.' Demurrers at 9.) Plaintiff further states that it has a legitimate business interest in utilizing the restrictive covenant because Watson had extensive and direct contact with Lasership's customers, as well as substantial knowledge concerning Lasership's confidential and proprietary business information. *Id.*

While the Supreme Court of Virginia has upheld non-solicitation agreements where a former employee had direct customer contact or substantial knowledge of the employer's confidential information or methods of operation, the non-solicitation covenant must be narrowly tailored to protect those interests. *See Paramount Termite Control Co. v. Rector*, 238 Va. 171, 175, 380 S.E.2d 922, 925 (1989). *See also Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 372, 389 S.E.2d 467, 469 (1990). Here, the non-solicitation clause is not narrowly tailored.

In the instant case, the non-solicitation agreement prohibits the employee for two years after termination from "contact[ing] in any manner, directly or indirectly, solicit[ing] or agree[ing] to perform services of any type that the Company can render ("Services") for any of Company's Customers." Paragraph 2 defines Customers as any person or entity invoiced in the year before the employee left Lasership's employ.

The clause prevents an employee from contacting in *any manner*, for *any purpose, any customer* of Lasership that was invoiced in the year before the employee left Lasership. As Defendant suggests, the agreement imposes an unreasonable burden on the employee to know all the customers invoiced in that year period. (Defs.' Mot. to Sustain Demurrers at 9.)

The non-solicitation clause is over-broad and unenforceable as a matter of law.

## C. *Enforceability of Paragraph 8(J): The Confidentiality Agreement*

As with non-competition clauses and non-solicitation agreements, confidentiality agreements constitute unfavored restraints on trade. The protection afforded to confidential information should reflect a balance between an employer who has invested time, money, and effort into developing such information and an employee's general right to make use of knowledge and skills acquired through experience in a field or industry for which he is best suited. As such, this Court applies the same test to confidentiality agreements that it does to non-competition agreements.

The confidentiality agreement in the instant case is not narrowly tailored to protect the legitimate business interests of Lasership. The clause at issue precludes an employee from "disclos[ing] to *any* person . . . *any* information concerning . . . the business of Lasership." As Defendants suggest, this provision prohibits Watson from telling a neighbor for the rest of her life *anything* about Lasership, including information that is not proprietary in nature or worthy of confidence. The clause is overly broad and is unenforceable as a matter of law.

Thus, a breach of contract claim cannot lie on its basis and the demurrer to the confidentiality clause is sustained without leave to amend.

### D. *Paragraph 15 and the Blue Pencil Doctrine*

The "blue pencil rule" permits a court to modify an otherwise unenforceable restrictive covenant to make its restriction reasonable. *See* 61 A.L.R. 3d 397. Courts will only modify a contract where it is clear from the express terms of the agreement that the restriction is severable from the agreement as a whole. *Id.* It is clear from the Watson Employment Agreement that the parties specifically intended each of the restrictive covenants contained therein to be severable. (Compl. Ex. A. ¶ 15.)

The Virginia Supreme Court has not directly ruled on "blue penciling" restrictive covenants. However, as detailed by the Honorable Judge Thacher of this Court in *Strategic Enterprise Solutions, Inc. v. Ikuma*, 77 Va. Cir. 179 (Fairfax County. 2008):

> Circuit courts throughout the Commonwealth have refused to "blue pencil" non-compete clauses. *See, e.g. Pais v. Automation Products, Inc.*, 36 Va. Cir. 230, 239 (Newport News 1995); *Northern Va. Psychiatric Grp. v. Halpern*, 19 Va. Cir. 279 (Fairfax 1990). The U.S. District Courts for both the Eastern and Western Districts of Virginia have also concluded that Virginia does not follow the "blue pencil" doctrine. *See Lanmark Tech, Inc. v. Canales*, 454 F. Supp. 2d 524, 529 (E.D. Va. 2006); *Roto-Die, Inc. v. Lesser*, 899 F. Supp. 1515, 1523 (W.D. Va. 1995).

*Strategic Enterprise*, 77 Va. Cir. at 185.

The parties in this particular case, however, not only contracted regarding the severability of the clauses in question, but specifically granted the court authority to modify the terms of any unenforceable provision. Paragraph 15 of the contract specifically addresses the effect of partial invalidity and grants the Court the authority to "reduce" the terms of an invalid restriction to render it enforceable. (Compl. Ex. A. ¶ 15.)

It is clear from the restrictive covenant jurisprudence in Virginia that judicial reformation of such agreements is discouraged. The underlying rationale prohibiting the "blue pencil" doctrine in Virginia is to prevent an "*in terrorem* effect" whereby an employee must try to interpret the legal enforceability of an ambiguous provision in order to decide whether it is

prudent to accept a particular job, *See Lanmark,* 454 F. Supp. 2d at 529. A contractual clause specifically granting the Court permissive authority to "reduce" or "modify" the invalid terms of a contract to render those terms enforceable does nothing to alleviate the *in terrorem* effect or overall clarity of the contract. While it could be argued that such a clause clarifies the intentions of the parties to have a restrictive covenant enforced, it does nothing to clarify whether a court will choose to exercise this permissive authority. Such a clause adds to the *in terrorem* effect and ambiguity of these disfavored covenants because the extent a court may subsequently "reduce" a provision's terms will never be clear to the parties upon entering into the agreement.

For these reasons, this Court declines to exercise the permissive authority granted by the parties in Paragraph 15 of the Employment Agreement to effectively "blue-pencil" the restrictive covenants. As a result, each of the restrictive covenants contained in the employment agreement are over-broad and unenforceable as a matter of law. Defendants' demurrer to Count I is sustained without leave to amend.

### *The Legal Sufficiency of Counts II and III*

Because the non-competition, non-solicitation, and confidentiality clauses are unenforceable as a matter of law, all claims arising from those clauses must be dismissed. Count II alleges a tortious interference with contract claim against defendant Midnite, and Count III alleges a statutory business conspiracy claim against both defendants. Each of these claims as pleaded arise from the unenforceable provisions of the contract. While Plaintiff contends in the second paragraph labeled 23 of the Complaint that the Defendants misused confidential information, this misuse is specifically alleged as a breach of an unenforceable provision of the Employment Agreement and therefore the count must be dismissed.

### *Conclusion*

Defendants' demurrers to Count I, II, and III are sustained without leave to amend.