## CIRCUIT COURT OF THE CITY OF RICHMOND

BB&T Insurance Services, Inc.

v.

Thomas Rutherfoord, Inc., et al.

February 9, 2010

Case No. CL09-4550

BY JUDGE RICHARD D. TAYLOR, JR.

This matter came on for hearing December 10, 2009, upon Defendants' demurrers to the Complaint and their request that the Court dismiss Plaintiff's claims, on all counts, with prejudice. Further, Defendant William S. Moore moved the Court to find, as a matter of law, that the Employment Agreement ("Agreement") between himself and BB&T Insurance Services, Inc. ("BB&T") is overbroad and unenforceable. The Court, having considered the pleadings and written memoranda filed by the parties, arguments of counsel, and applicable Virginia law, finds that the Agreement is invalid and sustains Defendants' demurrers.

## I. Background

This action arises from Moore and Donna Perkinson's decision to voluntarily terminate their employment relationships with BB&T, and their subsequent decision to accept employment with Thomas Rutherfoord, Inc. ("Rutherfoord"), a BB&T competitor. Plaintiff alleges Breach of Fiduciary Duties ("Count I"), Breach of Contract ("Count II"), Tortious Interference with Contract ("Count III"), Tortious Interference with Business Expectancy ("Count IV"), Common Law Conspiracy ("Count V"), Business Conspiracy in violation of Virginia Code § 18.2-499 ("Count VI"), and Misappropriation of Trade Secrets in violation of the Virginia Uniform Trade Secrets Act ("Count VII" or "VUTSA"). Defendant Moore demurs to Counts I, II, IV, V, VI, and VII of the Complaint Defendant Perkinson demure to Counts I through VII of the Complaint. Defendant Rutherfoord demurs to Counts III though VII of the Complaint. All Defendants contend that the Agreement is invalid as a matter of Virginia law.

## II. Analysts

A demurrer tests the legal sufficiency of a pleading to determine whether the pleading states a cause of action. *Fun v. Va. Military Inst.*, 245 Va. 249, 427 S.E.2d 181 (1993). The Court admits the truth of all well-pleaded material facts and all reasonable inferences fairly and reasonably drawn, but does not admit the correctness of the conclusions of law stated by the pleader. *Ames v. American Nat'l Bank*, 163 Va. 1, 37-38, 176 S.E. 204, 215-16 (1934). On demurrer, "a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156, 156 (1991); Va. Sup. Ct. Rule 1:4(i).

### A. *The Legal Sufficiency of Count I: Breach of Fiduciary Duty*

Count I alleges that Moore and Perkinson breached the duty of good faith, loyalty, and honesty owed to BB&T during and after their employment with BB&T. (Comp. ¶ 47.) For the reasons set forth below, the Court finds that BB&T has failed to sufficiently state a claim of breach of fiduciary duties owed to BB&T by Moore and Perkinson and sustains the demurrers to Count I.

An employee's fiduciary duty of loyalty is well established in the law. In *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 576 S.E.2d 752 (2003), the Court recognized the common law principle that "an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment. ... Subsumed within this general duty of loyalty is the more specific duty that the employee not compete with his employer during his employment." *Id.* at 289. 576 S.E.2d at 757. Further, a fiduciary duty continues after the termination of the employment relationship only when there is a continuation of "transactions" that began during the existence of the employment relationship or that were founded on information gained during the relationship. See *Today Homes, Inc. v. Williams*, 272 Va. 462, 634 S.E.2d 737 (2006).

The Supreme Court of Virginia has offered guidance with regard to the duty of loyalty. In *Dominion Tech. Partners*, the Court enumerated the type of unambiguous conduct that constitutes a breach of the duty of loyalty that one owes to his employer. "Principally, an employee must not have 'misappropriated trade secrets, misused confidential information, [or] solicited an employer's clients or other employees prior to termination of employment.' While this list is by no means exhaustive, it is indicative of the types of conduct by an employee that the common law will not condone in an employment relationship." *Dominion Tech. Partners*, 265 Va. at 291, 576 S.E.2d at 758 (internal citations omitted).

Plaintiff states in support of its allegations of breach of fiduciary duty that Moore and Perkinson "changed the process for obtaining renewal information for existing BB&T Insurance customers that were coming up for renewal ... [and Moore] met with only one or two of the accounts coming up for renewal before he resigned his employment. . . . ." (Comp. ¶ 25.) Plaintiff also alleges that Moore "delayed the consummation of renewal business with current BB&T Insurance customers ... so that he could usurp the opportunities for himself and/or Rutherfoord." (Comp. ¶ 27.) Plaintiff alleges that Moore encouraged Perkinson to terminate her employment with BB&T and that, together, they encouraged another employee to leave. (Comp. ¶¶ 30, 34, 38.) Lastly, Plaintiff alleges that Moore notified his colleagues and customers of his intentions to leave BB&T. (Comp. ¶¶ 31, 33.)

The Court finds that the allegations as pleaded, in and of themselves, do not constitute a claim for a breach of fiduciary duties during or after employment with BB&T. At best, they are conclusions that lack a sufficient factual basis to so apprise Moore and Perkinson of the

claims against them and to enable them to formulate a defense. While the Court recognizes that Defendants' actions exceeded mere preparation, the Court finds that these actions as pleaded do not sufficiently state a cause of action for a breach of fiduciary duties. For these reasons, Defendants' demurrers to Count I are sustained.

B. *The Legal Sufficiency of Count II: Breach of Contract and Count III: Tortious Interference with Contract*

The fundamental and critical assumption in Plaintiff's counts alleging breach of contract against Moore and tortious interference with contract against Perkinson and Rutherford is the existence of a valid contract. Thus, at the heart of these allegations are contentions surrounding the Agreement signed by Moore in 1999. At issue is language in that Agreement regarding non-competition, confidentiality, and blue-pencil provisions. For the reasons that follow, the Court finds that the non-competition and confidentiality provisions are unenforceable and that the Agreement is invalid in its entirety.

1. *Non-Competition Provision*

In Virginia, restrictive covenants, or covenants not to compete, are disfavored restraints on trade. *Omniplex World Services Corp. v. US Investigations Services, Inc.*, 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005); *Motion Control Systems, Inc. v. East*, 262 Va. 33, 37, 546 S.E.2d 424, 425 (2001). "The employer bears the burden to show that the restraint is reasonable and no greater than necessary to protect the employer's legitimate business interest." *Motion Control Systems, Inc.*, 262 Va. at 37, 546 S.E.2d at 425. Any ambiguities in the contract will be construed in favor of the employee. *Omniplex*, 270 Va. at 249, 618 S.E.2d at 342 (citing *Simmons v. Miller*, 261 Va. 561, 580-81, 544 S.E.2d 666, 678 (2001)).

"[C]ovenants not to compete have been upheld only when employees are prohibited from competing directly with the former employer or through employment with a direct competitor." *Id.* Specifically, the Court must determine if the restrictions are: (1) narrowly drawn to protect the employer's legitimate business interest; (2) not unduly burdensome on the employee's ability to earn a living; and (3) not against public policy. *Omniplex*, 270 Va. at 249, 618 S.E.2d at 342 (citing *Modern Env'ts, Inc. v. Stinnett*, 263 Va, 491, 493, 561 S.E.2d 694, 695 (2002); *Simmons*, 261 Va. at 580-81, 544 S.E.2d at 678 (2001)). An

analysis of these three factors requires consideration of the restriction in terms of function, geographic scope, and duration. *Simmons*, 261 Va. at 581, 544 S.E.2d at 678.

Plaintiff urges the Court to analyze the enforceability of the Agreement under a "sale of business" standard. Plaintiff contends that, under Virginia law, covenants entered into in the context of the sale of a business are analyzed differently than those arising in the simple employment context and a more lenient standard should be applied in the sale of business context The Court declines Plaintiff's invitation to utilize the "sale of business" standard, finding that an adoption of such standard in this case would constitute an unwarranted expansion of the law. Instead, the Court will analyze the Agreement and its provisions, according to the standards articulated in *Omniplex, Motion Control Systems, Inc.,* and *Simmons*. Under these standards, the Court must determine whether the restrictions are reasonable and no greater than necessary to protect the employer's legitimate business interest.

The non-competition provision appears in Section 8 of the Agreement. Pursuant to section 8 of the Agreement, Moore cannot, for a period of two years after his employment with BB&T has terminated:

>    (i) Solicit, encourage, or support any employee of BB&T Insurance to leave the employment of BB&T Insurance;
>    (ii) Solicit, encourage, or support any supplier of goods or services to BB&T Insurance to discontinue doing or to reduce the amount of business for BB&T Insurance;
>    (iii) Engage in any "competitive activity" … with any "BB&T Insurance customer" … or
>    (iv) Engage in any "competitive activity" … within the restricted territory. . . .

The Agreement defines "Competitive Activity," "BB&T Insurance Company," and "Restricted Territory," as follows:

>    (i) "Competitive Activity" means the sale, trade, or service or attempted sale, trade, or service of insurance products;
>    (ii) "BB&T Insurance Customer" means any company or individual customer of BB&T Insurance (1) who; within the two-year period ending with the termination of

Employee's employment hereunder, contacted Employee or a person supervised by Employee or was contacted or served by Employee or by a person supervised by Employee regarding the sale, trade, or service or the attempted sale, trade, or service of insurance products or any other business activities of BB&T Insurance; or (2) who purchased products or services from BB&T Insurance during Employee's employment with BB&T Insurance;

(iii) "Restricted Territory" means (1) the City of Petersburg, Virginia, (2) any county contiguous to the City of Petersburg, Virginia, or (3) the independent city or county to which Employee was primarily assigned by BB&T Insurance within the last two preceding years before the end of Employee's employment with BB&T Insurance and any county contiguous to such independent city or county.

The covenants in the Agreement clearly include functional, geographic, and durational restrictions upon Moore. The parties do not take issue with the two-year durational scope of the Agreement and the geographic area covered by the restrictions. The functional restrictions of the Agreement, however, are in controversy. Functionally, Moore is precluded from engaging in "the sale, trade, or service or attempted sale, trade, or service of insurance products" for any business within the "Restricted Territory." He is also prohibited from engaging in "the sale, trade, or service or attempted sale, trade, or service of insurance products" for (1) anyone who contacted or was contacted by Moore or his subordinate regarding an "insurance product" or "any other business activities of BB&T" at anytime within the two years prior to Moore's termination; or (2) anyone who ever purchased products or services from BB&T Insurance during Moore's employment, regardless if that person or entity interacted with Moore or not, or whether they remain a customer of BB&T.

The terms "insurance products," "any other business activities of BB&T," "solicit, encourage, or support" are not defined and are ambiguous. These ambiguities will be construed against BB&T and in favor of Moore. Further, the restrictions are overbroad because they are not limited to commercial or personal insurance businesses that are in direct competition with BB&T.

Defendants persuasively argue, for example, that Moore could not encourage a BB&T employee or an independent contractor janitor that

services the office to pursue higher education. Moore also appears to be prohibited from working for a rental car company because he would be required to "sell" or offer insurance for the vehicles rented by the company.

Because the prohibition is not limited to employment that would be in competition with BB&T, it is not narrowly drawn to protect the employer's legitimate business interest. It is unduly burdensome on Moore's ability to earn a living and is offensive to the public policy of the Commonwealth. Therefore, the non-competition restrictions are overbroad an unenforceable.

## 2. Confidentiality Provision

Defendant Moore also challenges the confidentiality provision set forth in Section 10 of the Agreement. Section 10(a)(3) prohibits the disclosure of "confidential information" to "any third party, either directly or indirectly." "Confidential information" is defined in Sec. 10(b) of the confidentiality provision.

Confidentiality agreements are also disfavored restraints on trade. *Lasership, Inc. v. Watson*, 79 Va. Cir. 205 (2009). The Supreme Court of Virginia applies the same test to confidentiality agreements as it does to non-competition agreements. "The protection afforded to confidential information should reflect a balance between an employer who has invested time, money, and effort into developing such information and an employee's general right to make use of knowledge and skills acquired through experience in a field or industry for which he is best suited." *Id.*

In this case, there is an issue with the duration of the confidentiality clause. The employee is restricted "[d]uring the term of the Employee's employment with BB&T Insurance *and for perpetuity* after Employee's separation of employment with BB&T Insurance." See *id.* (emphasis added). Similar to the example stated in *Lasership*, the perpetuity restriction prohibits Moore for "the rest of his life." This causes the clause to be overly broad and not narrowly tailored to protect the legitimate business interest of BB&T. As such, the confidentiality restriction is unenforceable as a matter of law.

## 3. Validity of the Agreement

Aside from the unenforceability of the restrictive covenants and the confidentiality provision, Defendants contend that the entire Agreement is

invalid because it contains a "blue-pencil" provision. Section 16, entitled "Severability," states:

> If any provision of this Agreement shall be deemed invalid as to its scope, then notwithstanding such invalidity, such provision shall be deemed valid to the fullest extent permitted by law, and the parties agree that, if any court makes such a determination, such court shall have the power to reduce the duration, scope, and/or area of such provision and/or to delete specific words and phrases by "blue penciling" and, in its reduced or blue penciled form, to enforce such provision to the fullest extent permitted by law.

The Supreme Court of Virginia has not directly ruled on "blue penciling" restrictive covenants. However, such provisions have been deemed invalid and render the agreement unenforceable. *Pace, v. Retirement Plan Admin. Serv., Ltd.*, 74 Va. Cir. 201 (Richmond 2007); see also *Lasership, supra.*

Given the Court's finding concerning the non-competition provisions, the confidentiality provision, and the unequivocal presence of the "blue-pencil" provision, the Court finds that the Agreement between Moore and BB&T is invalid in its entirety. In the absence of a legally enforceable contract between Moore and BB&T, Plaintiff's claim for a breach of contract ("Count II") and tortious interference with contract ("Count III") are not sufficient to survive demurrer and are dismissed.

The parties argued at length as to whether Defendant Moon was an "employee-at-will." Because the Court has found the Agreement invalid as a matter of law, the Court will not address this issue.

## C. *The Legal Sufficiency of Count IV: Tortious Interference of Business Expectancy*

In order for a claim of tortious interference of business expectancy to be sufficient to survive a demurrer, Plaintiff must sufficiently allege the following elements: (1) the existence of a business relationship or expectancy with a probability of future economic benefit to the Plaintiff; (2) Defendants' knowledge of that relationship or expectancy; (3) a reasonable certainty that, absent Defendants' intentional misconduct, Plaintiff would have continued in the relationship or realized the expectancy; (4) interference by improper methods; and (5) damages resulting from that improper interference. See *Glass v. Glass*, 228 Va, 39,

52, 321 S.E.2d 69, 77 (1984); *Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 836 (2001). Proof of the first and third elements require an objective test. A plaintiff's subjective "belief and hope that a business relationship will continue is inadequate to sustain the cause of action." *Commercial Business Sys., Inc. v. Halifax Co.*, 253 Va. 292, 301, 484 S.E.2d 892, 897 (1997).

As to the first element, BB&T has sufficiently alleged the existence of a business relationship with its customers, via valid contracts with said customers (Comp. ¶ 79), specifically, a contract with Don's Trucking Company. (Comp. ¶ 25.) These contractual relationships created an objective probability of future economic benefit to BB&T. (Comp. ¶ 79.) Therefore, element one is satisfied.

As to the second element, BB&T has sufficiently alleged that all Defendants had actual knowledge of these business relationships and expectancies. (Comp. ¶ 80.) Therefore, element two is satisfied.

As to the third element, BB&T has sufficiently alleged that, absent the intentional misconduct of the Defendants, BB&T would have continued its business relationship with its clients. Specifically, BB&T alleges that its contract with Don's Trucking Company was coming up for renewal in May 2009. (Comp. ¶ 25.) Although this is not a guarantee of a continuation of the business relationship between BB&T and Don's Trucking Company, it is enough to meet an objective standard as to the reasonable expectation of that continuance. *Commercial Business Sys. Inc.*, 253 Va. at 301, 484 S.E.2d at 897. Therefore, element three is satisfied.

As to element four, BB&T has failed to sufficiently plead interference by use of improper methods on the part of the Defendants. BB&T claims that Defendants used improper methods "includ[ing], but not limited to, Moore's breach of the Employment Agreement; Moore and Perkinson's breach of fiduciary duties; Rutherfoord and Perkinson's tortious interference with the Employment Agreement; Defendants' unlawful conspiracy to injure BB&T Insurance in its trade or business, and Defendants' violation of the Virginia Uniform Trade Secrets Act." (Comp ¶ 81.)

For the reasons stated in Part II(B) of this opinion, the Agreement is invalid and unenforceable as a matter of law, and therefore breach of said contract cannot satisfy the improper means requirement of a tortious interference with business expectancy claim.

For the reasons stated in Part II(A) of this opinion, Plaintiff did not sufficiently state a cause of action for a breach of fiduciary duties with

regards to Moore and Perkinson. Therefore, this claim cannot satisfy the improper means requirement of a tortious interference with business expectancy claim.

For the reasons stated in Parts II(D) and (E) of this opinion, Defendants did not sufficiently state a cause of action for common law conspiracy or statutory business conspiracy. Therefore, this claim cannot satisfy the improper means requirement of a tortious interference with business expectancy claim.

For the reasons stated in Part II(B) of this opinion, the Agreement is invalid and unenforceable as a matter of law, and therefore interference with said contract cannot satisfy the improper means requirement of a tortious interference with business expectancy claim.

Finally, for reasons stated in Part II(F) of this opinion, Defendants did not sufficiently state a cause of action for a violation of the VUTSA. Therefore, BB&T failed to sufficiently plead interference by use of improper methods on the part of the Defendants.

As to element five, BB&T has sufficiently pleaded actual resulting damages. Specifically, BB&T alleges that it has lost the business of Don's Trucking Company. (Comp. ¶¶ 37, 82.) Therefore, element five is satisfied.

BB&T has failed to sufficiently plead all necessary elements of tortious interference with business expectancy. Therefore, Defendants' demurrer as to Count IV is sustained.

## D. *The Legal Sufficiency of Count V: Common Law Conspiracy*

BB&T claims that Defendants conspired for the unlawful purpose to "have Moore and Perkinson violate their fiduciary duties and to have Moore violate the Employment Agreement." (Comp. ¶ 86.) For reasons set forth in Part II(B) of this opinion, the Agreement is invalid and unenforceable as a matter of law. As such, any alleged violation of this contract cannot satisfy the unlawful purpose requirement for a common law conspiracy claim. For reasons set forth in Part II(A) of this opinion, BB&T failed to plead sufficient facts to support a claim of breach of fiduciary duty. Therefore, this claim of breach of fiduciary duty cannot satisfy the unlawful purpose requirement for a common law conspiracy claim.

Further, the Complaint fails to allege common law conspiracy with requisite particularity. "A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal

or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Commercial Business Sys., Inc. v. BellSouth Services, Inc.*, 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995). Without the claims of breach of contract and breach of fiduciary duties, the Complaint simply states the elements of a common law conspiracy. This form of pleading does not sufficiently allege a common law conspiracy. See *Bowman v. State Bank of Keysville*, 229 Va. 534, 541, 331 S.E.2d 797, 802 (1985); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

BB&T has failed to state facts sufficient to support a claim of common law conspiracy. Therefore, Defendants' demurrer as to Count V is sustained.

## E. *The Legal Sufficiency or Count VI: Statutory Business Conspiracy*

A business conspiracy exists if "any two or more persons … combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever." Va. Code §§ 18.2-499, 18.2-500. To prove a violation of this statute, a plaintiff must show that the conspirators acted with malice, meaning that "the defendant acted intentionally, purposefully, and without justification." *Simmons*, 261 Va. at 578, 544 S.E.2d at 677 (citations omitted).

For the reasons cited in Part II(D) of this opinion, BB&T has failed to state facts sufficient to support a claim of statutory business conspiracy. Therefore, Defendants' demurrer as to Count VI is sustained.

## F. *The Legal Sufficiency of Count VII: Virginia Uniform Trade Secrets Act*

The VUTSA requires that, in a claim of trade secret misappropriation, the Plaintiff must allege sufficient facts to establish both the existence of a trade secret and the misappropriation of that trade secret. Va. Code § 59.1-336, *et seq.; MicroStrategy, Inc. v. Li*, 268 Va. 249, 263, 601 S.E.2d 580, 588 (2004). Further, a trade secret must be information that is "not readily ascertainable by proper means" and must "be subject of efforts that are reasonable under the circumstances to maintain its secrecy." Va. Code § 59.1-336. VUTSA defines "improper means" as "theft, bribery, misrepresentation, breach of duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Va, Code. § 59.1-336. BB&T makes no allegations of theft,

bribery, misrepresentation, or espionage. Rather, it claims that Defendants breached a duty to maintain secrecy. (Comp. ¶ 47.)

For the reasons stated in Part II(A) of this opinion, Plaintiff did not sufficiently state a cause of action for a breach of fiduciary duties with regard to Moore and Perkinson. Defendant Rutherfoord had no such duties, and Plaintiff has failed to plead facts sufficient to allege that Rutherfoord induced a breach of such duties. Plaintiff has failed to sufficiently plead the element of improper means, and therefore has failed to sufficiently state a claim for violations of the VUTSA. Defendants' demurrer as to Count VII is sustained.

## II. Conclusion

After considering the record, argument of counsel, and the legal memoranda filed by the parties, the Court sustains Defendants' demurrers to all seven Counts of Plaintiff's claim and dismisses Counts II and III. It is so ordered.