# CIRCUIT COURT OF CHESTERFIELD COUNTY

SanAir Technologies
Laboratory, Inc.

v.

David M. Burrington
and Hayes Microbial
Consulting, L.L.C.

September 25, 2015

Case No. CL15-1612

BY JUDGE EDWARD A. ROBBINS, JR.

This matter came before the Court on August 25, 2015, on Plaintiff SanAir's Complaint and Verified Petition for Temporary Injunction and Defendants David M. Burrington and Hayes Microbial Consulting's Answer. Upon considering the evidence presented and the oral and written arguments made by counsel, the Court makes the following ruling with respect to the temporary injunction.

*Background*

On June 16, 2015, SanAir Technologies Laboratory ("Plaintiff" or "SanAir" herein), filed a Complaint and Verified Petition for Temporary Injunction. The Complaint alleges three counts against David Burrington and Hayes Microbial Consulting ("Hayes" herein), Count 1: Violation

of the Virginia Uniform Trade Secrets Act (VUTSA), Count 2: Tortious Interference with Contract, Count 3: Breach of Contract Claim against Defendant Burrington. In its Complaint, SanAir prays for temporary and permanent injunctive relief preventing Defendants from competing with SanAir or disclosing or misappropriating SanAir's confidential, proprietary information or trade secrets.

On July 29, 2015, Burrington filed his Answer praying that each of the three counts be dismissed and a Demurrer to each of the alleged counts. Defendant Hayes also filed an Answer and Demurrer seeking dismissal of the counts. The Court heard argument on the Demurrers on September 14, 2015, and the Demurrers were overruled.

## Analysis

The Code of Virginia mandates that the award of an injunction is within the jurisdiction of the circuit court. Va. Code Ann. § 8.01-620. The Supreme Court of Virginia has held that "the granting of an injunction is an extraordinary remedy and rests on sound judicial discretion to be exercised upon consideration of the nature and circumstances of a particular case," *Preferred Sys. Solutions, Inc. v. GP Consulting, L.L.C.*, 284 Va. 382, 401, 732 S.E.2d 676 (2012) (quoting *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 60, 662 S.E.2d 44 (2008)), and that plaintiff seeking permanent injunctive relief has the burden to demonstrate "irreparable harm and the lack of an adequate remedy at law." *Id.* (quoting *Black & White Cars v. Groome Transp.*, 247 Va. 426, 431, 442 S.E.2d 391 (1994)). However, the Supreme Court has not established the standard for the issuance of a temporary injunction. As such, Virginia trial courts have adopted the four-part test as set forth by the Supreme Court of the United States and adopted by the Fourth Circuit. *See, e.g., McEachin v. Bolling*, 84 Va. Cir. 76, 77 (Richmond 2011) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)); *Dean v. Virginia High School League, Inc.*, 83 Va. Cir. 333, 334 (Norfolk 2011) (citing *Merrill Lynch, Pierce, Fenner, and Smith v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985)). This four-part test requites that the plaintiff "establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm the absence preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the interest." *Winter*, 555 U.S. at 20.

Several of the alleged legal theories can potentially support the issuance of a temporary injunction (1) to covenants not to compete, (2) the Virginia Trade Secrets Act, (3) the confidentiality agreements, (4) the tortious interference claim. SanAir also asserts the inevitable discovery doctrine as a ground for relief. The Court will address each in turn.

A. *Likely To Succeed on the Merits*

1. *The Covenant Not To Compete*

"Restraints on trade are not favored in Virginia, hence, contracts in restraint of trade are enforceable only if narrowly drawn to protect the employers legitimate business interest . . . not unduly burdensome on the employee's ability to earn a living and . . . not against public policy." *Preferred Sys.*, 284 Va. at 393 (quoting *Omniplex World Servs. Corp. v. US Investigations Servs.*, 270 Va. 246, 249, 618 S.E.2d 340 (2005)). The plaintiff bears the burden of proof and the court considers "the function, geographic scope, and duration of the restriction" when analyzing the factors. *Id.* (citations omitted).

The Supreme Court of Virginia has found non-competition agreements to be justified when there has been personal contact between an employee and the employer's customers. *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 372, 389 S.E.2d 467 (1990). A non-compete "covenant must be strictly construed and, if ambiguous, it must be construed in favor of the employee." *Motion Control Sys., Inc. v. East*, 262 Va. 33, 37, 546 S.E.2d 424 (2001). Virginia applies the same test to non-solicitation agreements and confidentiality agreements as it does to non-compete agreements. *Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 214-15 (Fairfax County 2009).

The Court is mindful that the covenant not to compete is subject to several reasonable interpretations with regards to what jobs, if any, Burrington may hold with a competitor and the geographic scope of the agreement. Defendants assert that the agreement is overbroad by the plain meaning of its terms. In contrast, plaintiff argues that the agreement cannot be considered in a "factual vacuum" and can be found reasonable and enforceable under the circumstances. *See Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 144, 747 S.E.2d 804 (2013).

The Court finds that the agreement indeed needs to be examined in light of the facts of this case, and, at this time, the Court expresses no opinion as to the enforceability of the agreement. It is sufficient to note that the agreement is subject interpretation and accordingly, even in light of evidence presented to date, the plaintiff has not shown that it is likely to succeed on the merits.

2. *The Virginia Uniform Trade Secrets Act*

To prevail on a VUTSA claim, "a plaintiff must prove that (1) the information in question constitutes a trade secret, and (2) the defendant misappropriated it. *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 422 (E.D. Va. 2011), citing *MicroStrategy, Inc. v. Business Objects*, S.A., 331 F. Supp. 2d 396, 416 (E.D. Va. 2004).

In the present case, it is disputed whether the customer and pricing information contained in SanAir's ACT database is a trade secret as defined by Va. Code § 59.1-336. Defendants argue that, in enacting the Uniform Trade Secrets Act, "UTSA," Virginia did not include customer lists in the statutory definition of a trade secret. Several states including Pennsylvania, Oregon, and Connecticut have expressly included "costumer list" in their statutory definition of trade secret. Compare 35 Pa. Stat. Ann. § 7302; Or. Rev. Stat. § 646.461; Conn. Gen. Stat. § 35-51, with Va. Code Ann. § 59.1-336, The Court finds this argument of statutory intent persuasive. However, the Court is mindful that, when examined in light of the factual circumstances of a particular case, a customer list may become a trade secret. *See Physicians Interactive v. Lathian Sys.*, No. CA-03-1193-A; 2003 U.S. Dist. LEXIS 22868, at **23-24 (E.D. Va., Dec. 5, 2003); *International Paper Co. v. Gilliam*, 63 Va. Cir. 485, 492 (Roanoke 2003). Relevant factor to consider include the uniqueness of the information, public availability of the information from other sources, and the steps that an employer has taken to keep the information secret.

In the present case, the Court received testimony that the main group of clients who engage SanAir and Hayes for environmental testing are relatively well known throughout the industry. Tr. at 117-19. Simply stated SanAir and Hayes do not solicit the general public for clients but a select group of other businesses who engage in certain types of services, including mold, asbestos, and home inspectors, environmental hygienists, and industrial engineering firms. Tr. at 117. Further testimony revealed that the contract information for these clients is readily available through public sources, including the internet and industry trade groups and publications. Tr. at 89-90. At this stage of the proceedings, the information in question does not appear to be particularly unique.

Without reaching the question of misappropriation, the Court finds that the preliminary matter of the status of the customer and pricing information with regards to the VUTSA needs to be examined in light of the facts of this case, and, at this time, the Court expresses no opinion as to the status of the information. It is sufficient to note that the status of the information is in controversy and, even in light of evidence presented to date, the plaintiff has not shown that the information is likely a trade secret. Therefore, the Court cannot find that the plaintiff is likely to succeed on the merits.

### 3. Confidentiality Agreements

The parties stipulated that, through the course of his employment with SanAir, Burrington entered into multiple confidentiality agreements. The agreements were entered collectively as Exhibit A. The 2004 and 2010 agreements are substantially the same. Through the agreements, Burrington acknowledges that he will have access to confidential information including

"customer lists and pricing policies" and that he will not "utilize or exploit" the information with any other individual or company. Ex. A.

The 2007 agreement is substantially the same as the 2004 and 2010 agreements except the 2007 agreement contains an exception that exempts from protection any information that is already in Burrington's possession, provided the information was lawfully obtained from third parties" and that "may be generally available to the public." Ex. A.

As noted in the Court's analysis herein regarding the VUTSA, SanAir's customer base is generally known throughout industry trade groups and publications. Additionally, their contact information is readily available to the general public. Arguably, this leaves SanAir's pricing policies as the only relevant confidential information addressed by the confidentiality agreements.

The confidentially agreement received little attention in the parties' oral arguments or memoranda. The Court has not been advised which agreements are still in effect or which agreement is controlling at this time. Accordingly, the Court makes no finding as to the enforceability of the confidentiality agreements. The Court finds it sufficient to note that, while the agreements may ultimately be enforceable, at this stage of the proceedings, they do not support issuance of a temporary injunction.

### 4. *Tortious Interference*

The tortious interference claim received little to no attention in the parties oral arguments or memoranda. The Court finds it sufficient to note that, at this stage of the proceedings considering the evidence presented, the tortious interference claim does not support issuance of a temporary injunction.

### 5. *Inevitable Disclosure Doctrine*

SanAir cites an unpublished opinion of this Court, *MeadWestvaco Corp. v. Bates*, CL 13-1589, 2013 Va. Cir. LEXIS 200 (Chesterfield County 2013), for the proposition that the inevitable disclosure doctrine has been recognized in Virginia courts. In the *MeadWestvaco* opinion, Judge Burgess considered the availability of the doctrine in Virginia courts. Judge Burgess concluded that "Virginia would *likely* apply the doctrine of inevitable disclosure," 2013 Va. Cir. LEXIS 200 at *35 (emphasis added); however, the doctrine was not applied or relied upon in the opinion. Accordingly, the Court declines to opine on the applicability of the doctrine at this stage of the proceedings.

B. *Moving Party Is Likely To Suffer Irreparable Harm*

The Court has limited evidence regarding any harm that has occurred or will occur to SanAir if the temporary injunction is not granted. Mr. McGlynn, the president of SanAir, testified only briefly about SanAir's sales figures since Burrington left SanAir's employ. Mr. McGlynn, testified that, with respect to one of SanAir's larger clients, RTK, sales figures were down prior to Burrington's departure and that, in fact, the slump in sales and Burrington's apathy towards the slump was part of the reason for his termination. Mr. McGlynn further testified that, after Burrington left, sales to RTK went up for a period and have since started to decline again. When questioned as to whether McGlynn has any personal knowledge that Burrington is responsible for the decline in sales to RTK, Mr. McGlynn answered that he has no such knowledge. Tr. at 84-85.

When questioned about his solicitation of several specific SanAir clients, Burrington admitted that a few of those clients have done business with Hayes since he started his employment with Hayes. Tr. at 33-36. However, Burrington's or any other witnesses' testimony does not indicate if these clients were already doing business with Hayes or to what extent before Burrington joined Hayes. SanAir offered no evidence that any particular client has decreased or stopped doing business with them since Burrington's termination. One reasonable inference supports a conclusion that these clients have split their business between SanAir, Hayes, or even another competitor for some time and Burrington's change in employment has not affected the allocation of these clients' business. Exhibit B, the email conversation with client Daniel Freeman, does not conclusively indicate that Mr. Freeman has done any business with Hayes or that Burrington has used SanAir's pricing policies to lure Freeman's business away from SanAir. Burrington and Mr. Hayes maintain, and the email reflects, that Hayes's pricing has remained constant at $15.00 per sample for several years. Tr. at 108-09, 121.

Considering the evidence presented, the Court cannot conclude at this stage of the proceeding that irreparable harm has or will occur to SanAir in the absence of a temporary injunction.

C. *Balance of Equities Tip in the Movant's Favor*

The Court has concluded based on the evidence presented thus far that SanAir has not proven it will suffer or has suffered any irreparable harm. In contrast, a temporary injunction would arguably prevent Mr. Burrington from working in the environmental testing industry for the duration of this litigation. The Court finds that a temporary injunction at this stage would significantly harm Mr. Burrington while providing little benefit to SanAir. Between as Hayes and SanAir, the equities are substantially balanced.

Thus, the Court finds that the balance of the equities do not tip in SanAir's favor.

### D. *The Injunction Is in the Public Interest*

#### 1. *The Covenant Not To Compete and Confidentiality Agreement*

The Virginia Supreme Court has stated that "covenants in restraint of trade are not favored, will be strictly construed, and, in the event of an ambiguity, will be construed in favor of the employee." *Modern Env'ts, Inc. v. Stinnett*, 263 Va. 491, 493, 561 S.E.2d 694 (2002). Additionally, the employer bears the burden of proving that the covenant is not overly "oppressive in curtailing an employee's ability to earn a livelihood, and is reasonable in light of sound public policy." *Id.* The same is true for confidentiality agreements. See *Lasership*, 79 Va. Cir. at 215.

#### 2 *The Virginia Uniform Trade Secrets Act*

"By adopting the Uniform Trade Secrets Act, the General Assembly has struck the public-policy balance to be applied by courts in this Commonwealth." *Dionne v. Southeast Foam Converting & Packaging, Inc.*, 240 Va. 297, 304, 397 S.E.2d 110 (1990).

In light of the contested ambiguities identified in the covenant not to compete, the contested applicability of the VUTSA, and the limited arguments presented as to the confidentiality agreement and the tortious interference claim, the Count finds that a temporary injunction is not in the public interest.

### Conclusion

For the foregoing reasons, the Court denies the Plaintiff's Motion for a Temporary Injunction.